296 P.2d 726

STATE of Utah, Plaintiff and Respondent,

v.

Milda Hopkins ASHDOWN, Defendant
and Appellant.

No. 8456.

Supreme Court of Utah.

April 30, 1956.

J. Vernon Erickson, Richfield, for appellant.

E. R. Callister, Atty. Gen., Walter L. Budge, Asst. Atty. Gen., for respondent.

McDONOUGH, Chief Justice.

Milda Hopkins Ashdown was found guilty of murder in the first degree in the death of her husband, Ray Ashdown, by a jury which recommended life imprisonment. She appeals from the judgment entered in accordance with that verdict.

On July 5, 1955, Dr. R. G. Williams of Cedar City, Utah, received an emergency call from Mrs. Ashdown to attend her husband. When the doctor arrived, Mr. Ashdown was in a convulsive state and told the doctor that he had taken some bitter-tasting lemon juice about a half-hour before. He died immediately after the doctor's arrival and the doctor later conducted an autopsy, sending certain specimens to the state chemist for analysis. According to the chemist's report, the stomach contents when analyzed showed the presence of strychnine.

After the funeral of Ray Ashdown on July 9, Mrs. Ashdown was taken from the cemetery where her husband was buried to the City and County Building for questioning by the sheriff, his deputies, and the district attorney. Although she was accompanied to the building by her sister, she was questioned alone for a period of five and one-half hours. At that time, no complaint had been filed against her. Her father and an uncle appeared during the time of the questioning and requested that she be given an attorney or that they be allowed to enter the room where she was questioned. They were denied admittance and assured by a deputy that there was an attorney with her who would apprise her of her constitutional rights. After about four or more hours of questioning, Mrs. Ashdown confessed that she had put strychnine in lemon juice and had given it to her husband to drink. She then made a request for the first time for an attorney and was told by the men present that it was unnecessary at that point because the only thing she hadn't told them was where she had obtained the poison. Thereafter, she related where she had obtained it and on the following day, she signed a written confession.

The trial court ruled that any evidence secured after she had asked for counsel was inadmissible and the written confession was not introduced for consideration by the jury.

She here contends that the oral confession was obtained from her by means of co-

ercion, duress, and promises of immunity and should not have been admitted. She charges that her limited education and hysterical condition and the length of time she was held without counsel or the advice of her family caused her to give evidence against herself which she would not have otherwise given. Further, she was influenced by the statements of the district attorney to the effect that he had been cleared of charges of murder in Europe through the efforts of investigating officials.

The trial court found that the defendant was advised of her constitutional rights before she made the statements of confession; that she did not ask for an attorney until after making those statements; that there were no threats nor promises of immunity, except that the district attorney informed her that if poison had been given by mistake it might make a difference between a prosecution for murder and manslaughter, and informed the defendant of the penalties for the two offenses; and that the method of examination and circumstances were not severe enough to amount to compulsion as that is contemplated by the constitutional provisions which provide that a person shall not be compelled to give evidence against himself. After ruling that the oral confession was admissible, the trial court submitted the issue of coercion, as affecting credibility, to the jury.

Although the burden of proof as to the voluntariness of the confession lies with the party seeking to use it as evidence, i. e., the prosecution, after the trial court has decided from the evidence that the confession was voluntarily made, the appellate court will not disturb that finding in the absence of a showing of abuse of its discretion where there is substantial evidence from which it could reasonably so find. State v. Crank, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542; III Wigmore on Evidence, Third Ed., Sec. 862. Some of the points upon which appellant relies as demonstrating coercion are refuted by the facts and uncontradicted evidence: (1) She complains that she did not have benefit of counsel at the time she made her confession. Ordinarily, a confession is not rendered inadmissible merely because it was made by the accused without counsel, Mares v. Hill, 118 Utah 484, 222 P.2d 811; State v. Braasch, 119 Utah 450, 229 P.2d 289; and she made no request for counsel until after she had made the confession here admitted for the jury's consideration. She did request an attorney immediately after confession and the trial court carefully excluded all statements, including her written confession, made after that time. (2) She contends that she was not properly informed of her privilege against self-incrimination. Although she took the stand for the limited purpose of testifying as to circumstances surrounding her confession, she offered no evidence to dispute the testimony of the sheriff and his deputies that she was so informed within one-half hour of the beginning of the questioning, some four hours

before she made any incriminating admissions. (3) She maintains that prolonged questioning without food or rest may have had the effect of limiting her ability to give a voluntary confession. The evidence shows that she was questioned from 4:00 p. m. until about 9:30 p. m. and that she gave her confession within the last hour. Her condition was not uncomfortable to the point of coercion during the questioning, although the weather was hot; the questioning was carried on by men whom she knew and who permitted her to discuss at will her family affairs much of the time. Under these circumstances, we do not feel that questioning for a period of five and one-half hours would tend to break her will or induce her to confess to a crime which she did not commit.

(4) Appellant is a person of limited education and was naturally emotionally upset at the time of the questioning. She had come to the court room immediately from the funeral and interment of her husband; there is some evidence that she was "crying," "moaning," and "sobbing" intermittently during the questioning. Certainly the intelligence, character, and situation of the accused at the time of the confession is an important consideration. Manifestly, the will of a person who is of tender age or of weak intellect may be more easily overcome than that of one who is more mature or more intelligent. This, alone, however, will not render a confession inadmissible and if the confession was obtained in a manner and by such methods as are consistent with the proper detection of crime and determination of guilt, then our duty is to sustain the trial court. State v. Mares, 113 Utah 225, 192 P.2d 861. Therefore, this aspect of her confession should be considered in relation to the point which we consider the most difficult; that is, whether the statements of the district attorney were such as to imply a promise of immunity from prosecution or otherwise coerce the accused into confessing.

(5) The deputy sheriff, who was present at the questioning testified:

"A. Mr. Fenton [the district attorney] made the statement as I recall being in quite a predicament at one time his self; that he was accused of killing four men and through the cooperation of the investigating officers and by telling the truth the investigating officers was of much value to him and possibly had saved him from the firing squad.

"Q. Where, with relation to this conversation you have told us about did this particular conversation come in? A. This was after, as I recall it, this was after she had been advised that her husband's death was caused by strychnine poisoning, and the statute of first degree murder and manslaughter was read to her. I think that statement that you made, Mr. Fenton, then was following.

\* · \* \* \* \* \* \*

"Q. Mr. Wells, in relation to the 9th day of July or any other time, do you know of any promises or offers that were made to Mrs. Ashdown that if she would tell what happened she would not be prosecuted? A. Not in my presence, no, sir."

Mrs. Ashdown took the stand for the purpose of giving testimony on this point only. She did not testify to any threats or third degree methods used upon her, but stated:

"A. Well, he said 'If you will tell us what happened, why it will go a lot easier on you.' He says 'I confessed and it was a lot easier on me; if I hadn't confessed I might not gotten off, I might have been facing the firing squad now.'"

As a result of the testimony of these two witnesses, the court called the district attorney, Patrick Fenton, as its own witness and questioned him as follows:

"Q. \* \* \* Referring to the testimony of the sheriff and Deputy Wells, regarding conversations with the defendant in the courtroom at the City & County Building in the afternoon or evening of the 9th of July, there was some statement made relative to the defendant being advised that it would be better for her if she told what had happened. Was any statement like that made by you or the sheriff or Deputy Wells, to Milda Ashdown? A. No, your Honor.

"Q. Did you tell her 'If you will tell us what happened why it will go a lot easier on you,' in substance or effect? A. No, your Honor.

"Q. Did either the sheriff or Deputy Wells make any statement to that effect to Milda Ashdown? A. No, your Honor, not in my presence.

"Q. Now what was said regarding some circumstance of your having been involved in some investigation and that you had avoided proceedings by telling what had happened? Was there anything said on that subject by you to Milda Ashdown that day? A. Yes, your Honor.

"Q. Will you tell us what it was, as accurately as you can. A. Yes, your Honor. Mrs. Ashdown had been asked by the sheriff several times if there was any possibility of an accident in connection with this matter, if she might possibly have got hold of some poison and put it in the glass of lemon juice thinking it was salt. And at one point during that phase of the conversation I told Mrs. Ashdown that at one time in Europe I had been accused of killing five men and that I had told the investigating officers of what had happened and that they had helped and in effect cleared me of the charges, and that if it was an accident she might wish to tell the investigating officer

what had happened. That is the conversation as nearly as I can remember it, your Honor."

As to the interpretation of the statement made by the district attorney, there is a decided conflict in the evidence and while we acknowledge the trial court's power to resolve that conflict, there remains the question of whether the statement, as related by the prosecution's witnesses, was designed to and did influence the giving of the confession by raising hopes of immunity from prosecution or other benefit. There is a wide disparity in the views of courts dealing with the problem of the effect of such vague, implied promises and it is obvious that each of such cases must be considered in the light of all the circumstances. The apparent conflict of authority is probably best summed up in 20 Am.Jur., Evidence, sec. 508:

"The indefinite hope of benefit held out by advice to the accused that it would be better for him if he would confess has sometimes been held sufficient to render resulting confessions involuntary, especially where such advice is given by one in authority. But the sounder rule is that a confession is not rendered involuntary by advice to the accused that it woud be better for him to confess if guilty, and if not guilty, to stand firm. Surely no temptation to an innocent man falsely to accuse himself can be found in the latter language. It is of much more impor-

tance to inquire as to the authority of the person who made the statement. Assuming that the authority of the persons addressing the accused was equal, there is little practical difference in saying that it would be easier for the accused if he confessed, or that it would be better for him to confess, or that it would be better for him to tell the truth.

"There is some difference of opinion as to whether saying to the accused that it would be better for him to tell the truth or to confess constitutes such an inducement as will make a confession obtained in consequence of it involuntary. In England, the tendency of the courts is to regard advice to tell the truth or to confess or tell all about the crime, when given by a person in authority, as sufficient to render involuntary any resulting confession, and there is some support for this view in the United States when the exhortation to the accused is made by a person in authority, as distinguished from a private person. The prevailing opinion, however, is that telling the accused that it would be better for him to speak or tell the truth does not furnish any inducement, or a sufficient inducement, to render objectionable a confession thereby obtained, unless threats or promises are applied."

In the case of State v. Gee Jon, 46 Nev. 418, 211 P. 676, 217 P. 587, 30 A.L.R. 1443,

various authorities holding with the majority view are reviewed; these cases hold that the exhortations made did not render the confessions inadmissible. It appears to us that some of these statements are more definite in promise and more calculated to produce a confession in response than the advice given in the present case. For instance, in State v. Allison, 24 S.D. 622, 124 N.W. 747, it was held that the statement by the sheriff to the defendant, "The best thing you can do is to tell the truth, and you might get out of it today," did not justify the exclusion of the confession from the jury.

 However, we need not rely merely upon majority precedent in concluding that the statement under examination should not be regarded as sufficient inducement to affect the voluntariness of the confession, for the record discloses uncontradicted testimony that (1) the statement was made early in the questioning during a discussion of whether or not Mr. Ashdown might have been given poison by mistake, (2) appellant was warned that any statement which she made might be used against her in court proceedings, and (3) she was also informed that the authorities did not want a confession from an innocent person. In relation to the final point, Sheriff Nelson testified:

"* * * I says 'No, we don't want you to confess to anything you didn't do; we don't want anyone to confess to something they didn't do.' And I think that was told to her at least twenty-five or thirty times during the conversation in the evening."

Under these circumstances, we agree with the trial court that the confession was voluntary within the meaning of constitutional provisions against self-incrimination and properly admissible in evidence.

 Appellant contends that there was error in Instruction No. 6 in that the jury was not instructed that they might reject in its entirety the confession of the appellant if they determined that it was made involuntarily: Instruction No. 6 reads:

"In this case there has been testimony that on two occasions the defendant was questioned or interviewed in the presence of the sheriff and other officers and that she made certain statements in answer to questions. Referring to such alleged statements, you are instructed to consider carefully all the surrounding circumstances including the events of the day and days immediately preceding. You should consider the attitude and conduct of the officers mentioned, their statements to the defendant, and whether any threats were made or any promises, either express or implied, of immunity from prosecution, or whether any assurance was given of any benefit or reward to the defendant if she made a statement. You should also consider the length of time covered by the questioning and

whether the circumstances show any coercion or compulsion or any physical or mental strain or suffering or fear or hysteria on the part of the defendant during the time. After giving due consideration to all the surrounding circumstances, you should determine whether the alleged statements or any of them are entitled to be believed and if so to what extent. You are the exclusive judges of the credibility of such statements and the weight to be given to them if you believe that any such statements were made."

The instruction was correct in allowing the jury to weigh the circumstances surrounding the giving of the confession and determining not the admissibility of the confession but rather the credibility of the confession as evidence. Appellant cites and emphasizes certain language from Justice Larson's opinion in the case of State v. Crank, 105 Utah 332, 142 P.2d 178, 196, 170 A.L.R. 542, as indicating that the jury may determine anew, after the court has admitted the confession as voluntarily made, whether to accept the confession or reject it from their consideration because it was not made within the standards set by the law for its admissibility. The error of this view is pointed out by the language of the majority opinion in the Crank case, written by Justice Wade:

"We agree with the rule approved in those cases, that a confession is not admissible in evidence unless it was vol-untarily made; that this question must be determined by the court from all of the evidence from both sides bearing thereon; that if the court is satisfied from the evidence that the confession was voluntary, then the court admits the confession in evidence to the jury, together with all of the evidence on the question of whether it was voluntary, and the circumstances surrounding its being made, and from such evidence the jury must determine the weight and credibility to be given it, but may not determine its competency as evidence, that being a question for the court."

The court, in that case, recognized that the jury might give the evidence so little weight because of the circumstances under which it was obtained as to practically ignore it, but stated that the jury should be instructed to consider such evidence for the purpose of determining what weight should be given to it. In the case of State v. Braasch, 119 Utah 450, 229 P.2d 289, the court cited as error the giving of an instruction similar to the one here requested by appellant that the jury should disregard entirely the confession if they found it was procured through coercion. Clearly, the instruction given in this case was proper.

Judgment affirmed.

CROCKETT, WADE, HENRIOD and WORTHEN, JJ., concur.