202 So.2d 539

**Lee ELROD**

v.

**STATE of Alabama.**

**7 Div. 767.**

Supreme Court of Alabama.

Sept. 14, 1967.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

Hugh Reed, Jr., Centre, for appellant.

MERRILL, Justice.

This appeal is from a verdict and judgment of guilty of murder in the first degree and a sentence of life imprisonment in the penitentiary. This is a companion case to that of Beverly v. State, 281 Ala. 325, 202 So.2d 534, this day decided.

The defendant, Elrod, and two companions, Frank Beverly and Gene Womack, planned and conspired to rob Andrew Bell and drove to his home on Lookout Mountain in Cherokee County. The three engaged Bell in conversation for a period of time. Bell, a farmer, also was a trader. According to defendant's confession, Frank Beverly showed interest in one of Bell's shotguns. Beverly purchased two shotgun shells from Bell and shot the first one at a can on the opposite side of the road from Bell's home. Beverly then asked Bell to set the can on a fence post which Bell did. Beverly shot Bell instead of the can. Bell did not die

immediately and when he started to get up, Beverly either kicked Bell in the face or hit Bell in the face with the butt of the shotgun.

Elrod, Beverly and Womack then stole Bell's car and other various items, most of which Bell kept in the trunk of his car. These items included rifles, an unknown amount of money, several violins and fiddles and a pair of black shoes which defendant was wearing when he was arrested. The violins taken included a Stradivarius and a Jacobus Steiner. Bell's son had seen both of these violins in his father's possession on July 18, 1966.

On three separate occasions, after the murder, defendant, Lee Elrod, and his son-in-law, Gene Womack, bought whiskey from one Dell Berry. On each occasion, they would sell Berry a violin and then they would use the purchase price of the violin to buy whiskey. The Stradivarius and the Jacobus Steiner violins were traded for five dollars a piece. A third violin was sold to Berry for four dollars.

The decomposing body of Bell, hereafter called deceased, was found near deceased's home by one Andrew Milton James on July 31, 1966. Deceased had been dead for some 48 to 96 hours. Sheriff Mack Garrett was called and in his examination of the area found a shotgun shell about 20 yards from the body, and found a shot in the fence post and some in the slabs. Sheriff Garrett testified that the house had been ransacked. Before the body was moved, it was examined by one Van Pruitt, Jr., a State Toxicologist. Pruitt examined only the exterior of the body. He found two lacerations on the deceased's chin, and another on deceased's lower lip. He also noticed that deceased's lower denture within the mouth was fractured or broken. At this time, Pruitt suggested that deceased died by natural causes.

On August 31, 1966, Pruitt performed a post-mortem examination of the body. At this time, he found two lead shots within the heart, two shots in the left lung, one in the left chest cavity, three within the liver, one within the pancreas and three within the lining of the stomach. In Pruitt's opinion, death was caused by the injuries to these organs, principally the heart.

Appellant raised the point that the indictment should have been quashed because the Grand Jury was not legally drawn and qualified because there were no names of females in the jury box and none therefore could have served on the Grand Jury. This question was raised and decided adversely to appellant's contentions in Beverly v. State, supra, and will not be further discussed here.

The main thrust of appellant's argument is that he was too ignorant to understand the explanation of his constitutional rights before making a confession and, therefore, he did not knowingly and intelligently waive his right to counsel before making his confession.

Defendant was arrested August 24, 1966, as an escapee from Georgia. On August 25, 1966, a warrant was sworn out charging defendant with first degree murder. Defendant was interrogated for the first and only time on August 29, 1966. At this time, State Investigator Wayne Combs testified that he read to the defendant the waiver of counsel by defendant in custody; that after he had read the waiver to Elrod, he explained it to him; that he asked Elrod if he understood the waiver, and that Elrod stated that he did and then signed the waiver with his mark.

The waiver of counsel by defendant in custody signed by Lee Elrod is as follows:

"I, William Lee Elrod, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that I am suspected of the offense of Murder 1st Degree in Cherokee County, Alabama, on the 28 day of July, 1966, and have been informed by them of my Rights as follows:

"1. That I may remain silent and do not have to make any statement at all.

"2. That any statement which I might make may be used against me in Court.

"3. That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.

"4. That if I do not have enough money to employ an attorney, I have the right to have one appointed by the Court to represent me; to consult with him before making any statement; and to have him present with me while I am making a statement.

"5. That if I request an attorney, no questions will be asked me until an attorney is present to represent me.

"After having my Rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I cannot read and write the English language but I fully understand my Rights to an attorney. I have been read this Waiver of Counsel and fully understand it. No threats or promises have been made to be to induce me to sign this Waiver of Counsel and to make a statement to the officers.

"This 29 day of Aug., 1966."

The interrogation of Elrod, during which time he made his confession, lasted two or three hours. Defendant makes no claim that he was threatened, promised, tricked or persuaded into waiving his right of counsel.

■ A defendant may waive his right to counsel and to remain silent, provided that waiver is made voluntarily, knowingly and intelligently. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The State properly has the burden to demonstrate a knowing and intelligent waiver of the privilege against self-incrimination and right to counsel with respect to incommunicado interrogation.

Basically, appellant argues that because he was illiterate, he could not knowingly and intelligently waive his rights. Elrod testified, not in the presence of the jury, that he could not read or write and only had had a second grade education. He did admit on cross-examination that he could read the Holy Bible and had once been a preacher. There was also some evidence that he had signed his name to checks, but he denied this. Elrod testified that he might have heard that the State of Alabama has a Constitution, but he didn't know of it. He also testified that he had never heard of the Constitution of the United States. His testimony included the fact that he had been hit over the head with a hatchet some two years previously, and that he often could not remember things. Elrod testified generally that he could not remember or did not understand in answer to most questions as to what happened while he was being interrogated by State Investigator Combs.

■ An "illiterate" is one ignorant of letters and books, unlettered, uninstructed, uneducated, unable to read or write, uncultivated, without book learning. State ex rel. Melvin v. Sweeney, 154 Ohio St. 223, 94 N.E.2d 785. Words and Phrases, "Illiterate." While illiteracy is a great misfortune, it does not mean insanity, and does not constitute a defense to crime or render a confession of guilt, otherwise unobjectionable, inadmissible in evidence against him. Mitchell v. State, 206 Ark. 149, 174 S.W.2d 241. Accused's intelligence, character and situation at the time of the confession of the crime charged are important considerations in determining whether the confession was voluntary, but the fact that accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary. State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726, affirmed 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443. Evidence tending to show a defendant's weak mentality, feeblemindedness, and mental stress does not affect the admissibility of the confessions, but rather is a matter that bears on the weight, credibility and effect to be given the confessions by the jury. State v. Stewart, 238 La. 1036, 117 So.2d 583.

As already stated, there was testimony that the waiver of counsel was read to Elrod; the waiver was then explained to him, Elrod then stated to Combs that he understood the waiver; and State Investigator Combs testified that he believed defendant to be uneducated, but, nevertheless, intelligent.

 We have said that a "person may be partially insane and still be competent to testify or make a confession." The involves an inquiry into his appearance, demeanor and the nature of his statements. It is for the court to determine whether he has or had the requisite intelligence and ability to communicate his responses to questions. Redwine v. State, 258 Ala. 196, 61 So.2d 724. The trial court decided, outside the presence of the jury, that the defendant did make a knowing and intelligent waiver of counsel, and we think the State met the burden imposed upon it to so prove. The trial court had the opportunity to hear the defendant testify (out of the presence of the jury) as to his competence and to his version of the circumstances surrounding his purported signature by mark of the written waiver. We find no error in the ruling of the trial court.

Defendant assigns as error the admission into evidence of State's Exhibit Number One. This is a photograph of the face-up body of Andrew Bell, taken as he was found, some 48 to 96 hours after his murder. The body, fully clothed, was in an advanced state of decomposition and extensively swollen. A multitude of flies and other insects covered the body.

This objection is fully covered in the companion case of Beverly v. State, supra, and need not be repeated here.

 Appellant charges error because Sheriff Garrett was not placed under the rule. We cannot agree. We have held that where witnesses are placed under the rule, it is discretionary with the presiding judge to permit exceptions to its enforcement.

Nichols v. State, 267 Ala. 217, 100 So.2d 750.

We have discussed those matters raised here that were not dealt with in Beverly v. State, supra. The appellant was vigorously defended and we find no reversible error in the record.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.