468 P.2d 639

The STATE of Utah, Plaintiff and Respondent,

v.

Gerald SCANDRETT, Defendant and Appellant.

No. 11733.

Supreme Court of Utah.

April 21, 1970.

Jay V. Barney, Ronald Boyce, Joseph M. Snee, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., R. Bruce Bybee, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Gerald Scandrett was charged with first-degree murder for the stabbing to death of Tony Trujillo on November 8, 1968, in a room of the Upland Hotel on West Temple Street in Salt Lake City. After some preliminaries the charge was reduced to second-degree murder. A jury was waived, and upon a trial to the court the defendant was found guilty of that charge and he appeals.

No attack is made, nor could it be, as to the sufficiency of the evidence to sustain the conviction. The issue presented on this appeal is that the trial court erred in denying a motion to suppress certain of the evidence and in considering it upon the question of the defendant's guilt in the trial. The case was presented to the court on the basis of the stipulations of respective counsel as to what certain persons would testify to if called as witnesses. It should be noted that this is different from a stipulation of what the facts are; and quite in contrast to what appears to be the assumption of defendant's counsel that the trial court was obliged to believe his evidence, and that we are obliged to assume that he so found the facts. In such a situation it is still the prerogative of the trial court to judge the credibility of the evidence so proffered, and to make his own determination of the facts therefrom; and it is our duty to assume that he believed those aspects of the evidence which support his conclusion and to review such testimony in the light favorable to the verdict he arrived at.

On November 8, 1968, the defendant Gerald Scandrett, and one Quimby Ferguson and the victim Tony Trujillo, were in the defendant's hotel room. They gave Tony Trujillo a dollar to go buy some wine, and an extra quarter he asked for to buy a beer while waiting for the liquor store to open. He returned much later than expected and without either the wine or the money. An argument ensued in which defendant threatened to kill Tony and in fact stabbed him in the chest with a butcher knife. After the lapse of a few minutes the defendant told the hotel clerk to call the police, which was done.

When the police arrived, and while they were looking over the victim, before any questions were asked of the defendant Scandrett, he said: "I did it, I did it, my fingerprints are on the knife." He was placed under arrest and was given instructions as to his constitutional rights in the manner of what has come to be known as the "Miranda warning."[1] Part of the statement as to what the police officers would testify to is thus:

The defendant at that time indicated that he understood his rights, and he understood the language in which Captain Ferguson gave him the warning; and, subsequently, with that warning he stated that he had knifed the victim, and that he had used the butcher knife, which is State's exhibit No. 1, and it was lying on the table in the room * * *

Prior to being taken to the police station he further stated that it was his intention to kill Mr. Trujillo.

That the officers who observed this defendant would state he had been drinking to an extent that the amount he drank would show that he was somewhat under the influence of alcohol, but that he did speak coherently; that he appeared to understand questions that were put to him, and in response to those questions, made intelligent, spontaneous answers * * *; that their testimony would be that in their opinion he was drunk, but not drunk to the extent that he did not know what he was doing.

After the defendant was taken to the police station, a tape recording was made of his interrogration by the officers. Their explanation of his rights included the right to remain silent and to have counsel, about which he now complains. Upon being advised of his right to have an attorney and have him present during the questioning, there was some inconclusive discussion about his having an attorney or obtaining one, but he told the officers that he wanted "to tell what happened" and he answered questions and made statements about the circumstances of his stabbing of Tony Trujillo. The defendant's position on the motion to suppress this evidence is that he was so intoxicated at that time that he was incapable of making an intelligent and voluntary waiver of those rights.[2] This contention is based on his own evidence that he had been drinking practically continuously for a period of about nine days, and that on that day he had been drinking a high-alcohol-content tokay wine, including just before and after the stabbing; and most significant, that his blood alcohol test showed the content of .26, whereas under our Utah statute .08 is pri-

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.E.2d 694 (1966).

2. See Logner v. North Carolina, D.C., 260 F.Supp. 970; Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70.

ma facie intoxication for driving an automobile.[3]

On the basis of the proffered evidence, including the tape recording of the interrogation, the trial court found contrary to defendant's contention and admitted the evidence. In connection with his ruling he made certain pertinent comments:

> * * * Under rather long experience, slurred speech has been an indication of one impaired by intoxicants. I got no evidence of slurred speech in anything that the defendant said on that tape.

MR. BARNEY: Of course, your Honor, that is not the only criterion * * *.

THE COURT: That is the only one I have mentioned up to now, go on to some of the others: If it is halted, if the thought is interrupted—it isn't related to the subject of the conversation, these are indications of thought impairment. During the course of the conversation he recollected promptly. Finally he said, "I want to tell what happened."

> * * * * * *

MR. BARNEY: All right; if the statute is .08 says he is under the influence, presumes he was under the influence to the point he could be convicted for driving while being affected by al-

cohol. At .26 is certainly considerably more than that.

THE COURT: All I have in this case is the testimony of Dr. Harvey in that regard. * * * Much depends upon the reaction of each individual person * * *. now he said some folks are affected with one drink of beer * * *. He used the word "imprecise." He would have to know what this defendant's personal reaction in the use of alcohol was.

> * * * * * *

The witness [defendant] recalled everything that was asked him except one thing; that is, whether or not he was given a warning * * *. He remembered clearly that he had a couple of cups full a half hour before, of liquor, or other intoxicants. At 6:00 o'clock he remembered all of the incidents of the occurrence leading to the stabbing. On the contrary, he remembered who was there; remembered what he said: "Where is my dollar? What did you do with my dollar?" There was no halting speech; there was no fumbling for words; no slurring.

> * * * * * *

The motion to suppress is denied.

 In determining whether there is reversible error, there are some fundamen-

---

3. Ch. 107, Sec. 2, S.L.U.1969, in code as Sec. 41-6-44, U.C.A.1953, which reduces the requirement from .15 as formerly provided in that section.

tal principles to be kept in mind. The purpose that should underlie and condition all rules relating to the investigation of crimes and the treatment of suspects should be to provide a fair, reasonable and practical means for seeking out the truth and doing justice. This should be done with civility and consideration for the suspect, without cruelty, oppression or imposition. But it is not necessary to lean over so far in that direction as to put such restrictions on peace officers that they cannot do a thorough and efficient job of investigating crime. While there should be proper concern for the rights of the suspect, there should be equal concern for protecting the public and preserving the peace and good order of society by seeing that the guilty are brought to justice. The rules assuring certain rights to persons suspected of crime came into being to guard against oppressive methods and abuses and they should be so applied as to achieve that result.

■ If it appears that an accused has been abused or imposed upon by the denial of a constitutional right or otherwise, so there is any likelihood that he was unjustly convicted, the conviction should not be permitted to stand. On the other hand, unless there is some possibility, a rule should not be regarded as an abstraction apart from

its reason for existence, and a mere technical violation or deviation be permitted to set free one who was no way abused or imposed upon, and who is obviously guilty of a crime. To do so comports with neither common sense nor justice, and defeats the real purpose such rules were intended to serve.

■ We direct our attention to the issues here presented in the light of the foregoing. The first observation to be made is that the pivotal question here: whether the defendant in an awareness of his rights, and in circumstances where he was free to choose, voluntarily waived his rights to remain silent and to have counsel, is something which it was the prerogative of the trial court to determine.[4] Because there is a reasonable basis in the evidence to sustain its determination, under the traditional rule of review hereinabove referred to, it should not be overturned.

A further proposition to be considered as to the validity of this conviction is whether what was done could, in any event, have been prejudicial to the defendant. On this point it is to be borne in mind that this was not a trial to a jury who it is generally assumed may more readily be prejudiced by improper evidence than would a trial judge who is better informed as to the

---

4. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and that intoxication of the accused goes to credibility of his statement rather than its competency see State v. Haworth, 24 Utah 398, 68 P. 155.

rules of evidence and the effect to be given it.

More important than the point just mentioned is the fact that this is not a case where an interrogation by police uncovered the circumstances of a crime, or where the defendant was thus connected with it. The facts of this crime and the defendant's connection with it were laid open to the bare bones by circumstances obvious for anyone to see when the police arrived, and by the statements voluntarily made by the defendant before he was taken into custody.[5]

■■ There are two differing views as to the effect of error in violating a constitutional right. On the one hand it is sometimes stated that the violation of such a right should be deemed prejudicial per se;[6] and on the other, that it may depend upon the circumstances. The first proposition has the frailty of most generalities. Simply that it is not universally true. There are certainly conceivable circumstances where the violation of a constitutional right could have no possible bearing upon any unfairness or imposition upon the defendant, or upon a correct determination of his guilt or innocence. We think the correct view, and the one which is both practical and in keeping with the desired objective of fundamental fairness and due process of law, is that there is a presumption that such error is prejudicial, but that it can be overcome when the court is convinced beyond a reasonable doubt that it had no such prejudicial effect upon the proceedings.[7] Correlative to this it is also true that when the guilt is shown by other untainted evidence so overwhelming that there is no likelihood whatsoever of a different result in the absence of such error or irregularity, there should be no reversal.[8] To reverse under either of such circumstances results in the distortion of the processes of justice and the unnecessary proliferation of legal proceedings.

■ For these reasons: (1) that the trial court found, as it reasonably could from the evidence, that the defendant was not deprived of the constitutional rights as he claims, but in fact waived them; (2) that he voluntarily fastened the crime upon himself before the police took him in custody; (3) that in the light of and coupled with the foregoing, it does not appear that

5. Chief Justice Warren very properly observed in Miranda v. Arizona, footnote 1 above, that there is no requirement that police stop a person who states that he wishes to confess a crime. * * * voluntary statements of any kind are not barred by the Fifth Amendment. See also State of Utah v. Jiminez, 22 Utah 2d 233, 451 P.2d 583.

6. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

7. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

8. § 77–42–1, U.C.A.1953, requires that errors which do not affect the essential rights of the parties be disregarded. See State v. Sinclair, 15 Utah 2d 162, 389 P.2d 465.

there was any treatment of the defendant which transgressed the required standards of decency and fairness, or which put the defendant at any substantial disadvantage or prejudice, it is our opinion that there is nothing to justify the reversal of his conviction.

Affirmed.

TUCKETT and ELLETT, JJ., concur.

CALLISTER and HENRIOD, JJ., concur in the result.