**STATE of Utah, Plaintiff and Respondent,**

v.

**James Walter WINKLE, Defendant and Appellant.**

**No. 13280.**

Supreme Court of Utah.

Nov. 18, 1974.

Heber Grant Ivins, American Fork, for defendant-appellant.

Vernon B. Romney, Atty. Gen., David L. Wilkinson, William T. Evans, Asst. Attys. Gen., Salt Lake City, for plaintiff-respondent.

CALLISTER, Chief Justice:

The defendant was convicted, by a jury, of first degree murder and sentenced to death by the trial court who, undoubtedly influenced by language contained in some of the nine separate opinions of Furman v. Georgia,[1] refused to allow the jury an opportunity to recommend life imprisonment. At the time of the sentencing Section 76–30–4, U.C.A.1953 provided:

> Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court.

The foregoing statute is not separable[2] and this court cannot rewrite it without invading the province of the legislature. In determining the separability of the statute, its history must be taken into account. The instant statute has been the

---

1. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

2. Sutherland, Statutory Construction, 4th Ed., Vol. 2, Secs. 44.03, .04 and .07.

law ever since statehood and prior thereto.[3] Its constitutionality has never been challenged until now, due to the Supreme Court's "decision" in the Furman case.

To say that Furman has created a (expletive deleted) quandary for state legislatures and courts is to put it mildly.[4] The logical result of deciding that the statute is not separable might lead to the conclusion that, under Furman, the whole statute is unconstitutional,[5] leaving this State without any penalty for murder in the first degree. Such a result, of course, could not be tolerated and lends justification to the strained reasoning of the trial court and Justice Henriod.[6]

This court should not declare the statute, or a part thereof (death penalty) unconstitutional. Nor are we convinced that the U.S. Supreme Court's 5–4 per curiam necessarily invalidates our statute in whole or in part. Said per curiam opinion states, ". . . The court holds that the *imposition and carrying out* of the death penalty *in these cases* constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments . . . " (emphasis added.) What it would do with our statute is conjectural. It might be observed that the U.S. Supreme Court (with its nine separate opinions) has created the confusion; now let it lead this State and the others out of this morass.

It is the duty of the trial court, and of this court, to proceed in all aspects of the case before us in accordance with the laws of this State; and to arrive at the verdict and to impose the judgment and sentence which are in conformity with the law and justice thereunder.[7] We so state with the utmost emphasis, notwithstanding our awareness that under the present confusion as to the law due to Furman and related federal decisions, there is the possibility that some aspect of a judgment regularly and correctly arrived at under our law, may not be carried out. If that be so, that is the responsibility of the federal courts and not of the courts of this State.

In accordance with the foregoing, this case should be remanded for another trial, allowing the jury the prerogative given by our law, or determining whether they desire to recommend life imprisonment, rather than the death penalty.[8]

ELLETT and TUCKETT, JJ., concur.

CROCKETT, Justice (concurring).

I am in agreement with the decision of this case on the basis of and in the manner set forth in the final two paragraphs of the main opinion.

HENRIOD, Justice (dissenting).

This is an appeal from a judgment sentencing defendant to death after conviction on a charge of brutally murdering two young women.

Utah has the following penalty statute for first-degree murder:

Utah Code Annotated 1953–76–30–4. Penalty for murder.—Every person guilty of murder in the first degree shall suffer death, *or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court.*

---

3. Comp.Laws 1876, p. 586, Sec. 1920.

4. See concurring opinion of Justice Ellett in State v. James, 30 Utah 2d 32, 36, 512 P.2d 1031 (1973) ; Vance, The Death Penalty After Furman, Notre Dame Lawyer, Vol. 48, p. 850; Wheeler, The Eighth Amendment After Furman, 25 Stanford L.Rev., p. 62; and, 86 Harvard L.Rev., p. 76.

5. Smith v. Carbon County, 95 Utah 340, 343, 81 P.2d 370 (1938).

6. And the cases cited in his opinion.

7. This court desires and is cognizant of its responsibility to support the Constitution of the United States. But the protection of the rights and liberties under the Constitution of Utah are equal to and in some instances superior. See Art. I, Secs. 1 to 22. As to cruel and unusual punishment, see Art. I, Sec. 9.

8. It should be noted that, because of Furman, the Utah State Legislature has repealed 76–30–4 and enacted new statutes, Laws of Utah 1973, Ch. 196, Secs. 76–3–206 and 76–3–207.

Furman v. Georgia,[1] is a case concededly dispositive as to interpretation of the language of our statute set out above. The United States Supreme Court had this to say, in reversing three cases where similar statutes were involved:

The court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *The judgment in each case is therefore reversed insofar as is leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings.*

Furman was decided on June 29, 1972. From that date forward Furman was controlling. The offense here was committed August 18, 1972.

The trial judge had before him the Furman decision. He applied it by refusing to instruct the jury as to the alternative in 76–30–4, supra: "or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life."

Two cases, State v. Dickerson,[2] and State v. Waddell,[3] have examined the case of Furman. The members of those cases in scholarly manner, have analyzed and reported—I think correctly,—the following principles involved by concluding generally and specifically as follows:

I. That if the death penalty can be upped or downed by the judge or jury, it is offensive to the Eighth and Fourteenth Amendments to the United States Constitution, as being cruel and unusual.[4]

II. That death penalty statutes like ours, having a disjunctive alternative punishment, are severable.

III. That Furman strikes out the second alternative.

IV. That the first alternative, calling for mandatory death remains, having been divorced from the second.

V. That such penalty becomes the sole punishment for murder.

VI. That such sole punishment is operative only prospectively and not retrospectively because of constitutional interdiction.

VII. That such ex post facto indisposition applies equally to legislative and/or judicial attempts to indulge such retroactivity.

No useful purpose could be served here in repeating the text of those two cases which reflect a careful, exhaustive research of the subject-matter here,—to which I commend the reader in whole or in part, at the expense of possible plagiarism or mis-interpreting some of the language of those who fashioned their appraisals.

Nonetheless, there is one conclusion found in both those cases with which respectfully I cannot subscribe: That the break-off point where the second alternative disappears and the only penalty becomes mandatory death, is the date of the decision of the highest court of the State involved. I think the date of the Furman decision,—that of the United States Supreme Court, June 29, 1972, is and should be controlling. This being so, and the date of the offense here,—August 18, 1972,—being subsequent thereto, compels me to conclude in this case that the accused was and is subject to the death penalty.

The main opinion obviously is displeased with the Furman decision, as are many of the states, whose legislative bodies have sought to preserve the death penalty by enactments designed to satisfy the expressions found in that case. Until such time as there may be further pronouncements by the U.S. Supreme Court, this author believes that what he has said above satisfies

---

1. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

2. 298 A.2d 761 (Del.1972).

3. 282 N.C. 431, 194 S.E.2d 19 (1973).

4. This author agrees that the death penalty is cruel, as any death is, but seriously questions its unusualness,—it having been usual from time immemorial.

such expressions, without eliminating our state statute with respect to capital punishment prevailing at the time of conviction. That is not to say that this author pleads a case either for or against such punishment, but simply is an effort to interpret our state laws in the light of the Furman case as applied to the circumstances attendant there, and those in the instant case.

I believe that the main opinion may be doing a useless thing here. No one asked for a new trial. The appellant, in his brief, states that the relief he seeks on appeal is either one of two things, 1) reversal of the conviction, failing which, 2) the death penalty should be reversed. As this case now stands, it simply has to do with a matter of law: Is our death penalty statute entirely void under the Furman decision, regardless of the facts leading to the homicide, and if it is not totally void, does the death penalty validly remain in Utah, although the alternative life sentence may be void? It seems to be that simple.

The jury in this case already has found the defendant guilty of homicide under the facts, so that there is nothing to send the case back for to try. The only question involved here is one of law, not of fact, and that question can be resolved by this court either under the Furman decision or in spite of it. Sending this case back for a new trial would involve a complete new presentation of the facts, before a complete new jury. This already has been accomplished; and under the interdiction in the decision of this court, results in a useless thing,—requiring the judge to instruct the jury as to its prerogative to recommend life imprisonment,—which is the Furman case,—and which portion of our law clearly was knocked out by Furman. Such procedure would require a reversal if defendant were found guilty again (which then would raise a serious, jeopardy question), and which then would require a third expensive trial if this court again sent the case back for a new trial.

The lower court in this case should be sustained. The matter of commutation or other disposition is apposite for determination by the proper authorities established by law for such purposes. There is a case now pending in the U.S. Supreme Court that may eliminate the confusion now existing nationally as a result of Furman. In the opinion of this author, presently there is nothing much that tends to allay the existing obfuscation. (All emphasis added.)