STATE of Utah, Plaintiff and Respondent,

v.

James Walter WINKLE, Defendant and Appellant.

No. 13280.

Supreme Court of Utah.

May 1, 1975.

Heber Grant Ivins, American Fork, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David L. Wilkinson, William T. Evans, Asst. Attys. Gen., Salt Lake City, Noall T. Wooton, Utah County Atty., Provo, for plaintiff and respondent.

CROCKETT, Justice:

The principal error complained of on this appeal was the failure of the trial court to submit to the jury and allow them to consider the issue of leniency under the then applicable statute, Section 76–30–4, U.C.A.1953:

> Every person guilty of murder in the first degree shall suffer death, or, upon the recommendation of the jury, may be imprisoned at hard labor in the state prison for life, in the discretion of the court.

It was the failure to allow the jury to consider a recommendation of life impris-

onment that persuaded the majority of this court (one justice dissenting) to conclude that:

> . . . this case should be remanded for another trial, allowing the jury the prerogative given by our law, of determining whether they desire to recommend life imprisonment, rather than the death penalty.[1]

■ Upon petition for rehearing the State represents to this court that it concedes determination of the issue of recommendation by the jury of life imprisonment as being resolved favorable to the defendant; and it urges that this removes the only matter of error which could be prejudicial to him and thus eliminates the necessity of a new trial. With this we agree, because our statutory and firmly established decisional law is that this court should not reverse a case and require a new trial merely because there has been some error or irregularity, but only if it is substantial and prejudicial in that it has resulted in an injustice, or at least that there is a reasonable likelihood that in its absence there would have been a result more favorable to the complaining party.[2]

■ Counsel for the defendant has further argued that this court should affirmatively consider and pass upon the contention made in his original brief; that the trial court erred in refusing to suppress and sustain objection to statements made to police officers by defendant after his arrest. His claim of impropriety is that the statements were made in violation of his right to counsel and his privilege against self-incrimination.[3] The question thus posed is whether the defendant, in awareness of his rights, and in circumstances where he was free to choose, knowingly and voluntarily waived his right to remain silent and to have counsel. It is both the prerogative and the duty of the trial court to make that determination. Consistent

---

1. State v. Winkle, Utah, 528 P.2d 467.

2. That an error which is not prejudicial in this sense should be disregarded see Sec. 77–42–1, U.C.A.1953; State v. Sinclair, 15 Utah 2d 162, 389 P.2d 465; State v. Siddoway, 61 Utah 189, 211 P. 968.

3. Rights guaranteed by Utah Const. Art. I, Sec. 12; and U.S.Const., Amends. V and VI.

therewith, the trial court conducted a separate hearing on this issue in the absence of the jury and upon the basis of the evidence found:

2. That at the outset of the interview the defendant was advised of his right to remain silent, and to legal counsel.

\* \* \* \* \* \*

5. That defendant proceeded with the interview knowing he could have counsel represent him then and whenever he so requested.

6. That defendant stated his willingness to make the statements at such interview and waived his right to counsel in proceeding therewith.

7. That the defendant knowingly and intelligently waived his right to counsel and to remain silent and voluntarily consented to the interview and to make the statements there given to questions regarding the charge against him.

Based upon the above and foregoing findings the court makes and enters the following:

### RULING

The defendant's motion to suppress the admissions of defendant made at the interview of August 23, 1972, be and the same is hereby denied.

 As we have heretofore held: because of the trial court's responsibility and his advantaged position, his rulings on questions such as the one presented here will not be disturbed unless they appear clearly to be in error.[4] Despite the defendant's averments and arguments to the contrary, it cannot be said with assurance that the testimony amply supports the above quoted findings and ruling.

 Consistent with what has been said herein, it is our conclusion that the proper procedure is to remand this case for proceedings under the assumption conceded by the State: that the defendant may have the benefit of a recommendation of life imprisonment. It is so ordered.

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, Chief Justice (dissenting):

I dissent.. Doing so, I can say that I am at a complete loss to know what the main opinion is talking about in the third full paragraph. It seems to be loaded with words headed for a cul de sac. What the state "represents . . . that it concedes determination of the issue of recommendation by the jury of life imprisonment as being resolved favorable to the defendant," is a gratuity. What it means is something this writer cannot comprehend. Anyway, what the state represents it concedes about something that was non-existent and a complete stranger in this case,— namely,—an instruction letting the jury make a recommendation,—not permitted in this case,—is a prelude to a circumlocutious journey to the last paragraph of the majority opinion which says that the Attorney General and this Court can make the recommendation instead of the jury, for leniency, where the jury could not and did not do in this case. All of which is sort of an end run, followed by a forward pass which is fumbled,—but where the referee rules that there has been a touchdown, even though the ball, after the fumble, is still 40 yards from the goal.

Besides, the peripatetic route travelled by the main opinion, it flies in the teeth of Furman v. Georgia, but conveniently extracts them with a pair of non sequiturs.

Until the case of State v. Waddell, 282 N.C. 431, 194 S.E.2d 19 (1973) now pend-

---

4. See State v. Scandrett, 24 Utah 2d 202, 468 P.2d 639; and cf. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; State v. Allen, 29 Utah 2d 88, 505 P.2d 302, and State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726, aff'd, 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443.

ing, is decided by the Supreme Court, the death penalty is the only legitimate one now extant in this state.

The case should be affirmed, as it should have been in the first place, with the sentence of death subsisting, as was pointed out in the dissent at the previous hearing.

That does not mean, necessarily, that this writer either is for or against the death penalty, but at the present moment, absent the questionable specificity of the main opinion here, it happens to be the law of Utah in this case, in my opinion.

The trial court should be affirmed.