The STATE of Utah, Plaintiff
and Respondent,

v.

David MEINHART, Defendant
and Appellant.

No. 16421.

Supreme Court of Utah.

Sept. 2, 1980.

Lynn R. Brown of Salt Lake Legal Defender's Ass'n, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Robert R. Wallace, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant David Meinhart was convicted by a jury of aggravated assault pursuant to

§ 76–5–103, Utah Code Ann., 1953, as amended, and sentenced to serve an indeterminate term not to exceed five years in the Utah State Prison. He appeals.

The information charged that on May 30, 1978, defendant assaulted Angela Janda, then age two years, by "such means and force likely to produce death or serious bodily injury."

On that date Angela was admitted to the emergency room of St. Mark's Hospital in Salt Lake City in a semiconscious state and with bruises on her face, head, and abdomen and right lower extremities. Later that night she was taken to Primary Children's Hospital in Salt Lake City and operated on to remove a blood clot on her brain. As a result of the injuries sustained, she now suffers from mental and motor retardation.

On June 1, 1978, defendant presented himself at an office in the Metropolitan Hall of Justice at the request of two detectives from the Salt Lake County Sheriff Juvenile Division. At 10:10 that morning the two detectives began interviewing defendant who, they learned, had been babysitting Angela and her brother and sister on May 30. Defendant was not placed under arrest at any time during the interview. The interview was tape recorded.

Approximately half way through the interview—which lasted two hours and ten minutes—one of the detectives read defendant the full "*Miranda* warning." [1] Defendant said that he understood his rights and when asked if he desired to consult with an attorney responded, "No, I don't need one." Although prior to being given the *Miranda* warning defendant denied having struck the child, he admitted, following the warning, that he "slapped her once on the head." The interview concluded at 12:20 p. m. and

defendant left the Metropolitan Hall of Justice.

Defendant raises two points on appeal. First, he argues that since he was not given the *Miranda* warnings at the *outset* of the interview with the two detectives, his subsequent inculpatory statements should not have been admitted at his trial. Second, he maintains that even in the face of the *Miranda* warning which was given, he did not knowingly and intelligently waive his right to remain silent or his right to counsel.

The resolution of the first issue depends on whether the interview at which defendant made his inculpatory statements amounted to *custodial* interrogation. In *Miranda* the Supreme Court stated:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[2] [Footnote omitted.]

When a person has been arrested he is clearly in custody [3] and subsequent cases from the United States Supreme Court have examined other situations in which a person is considered to be in custody.[4] We think the case of *Oregon v. Mathiason* [5] is controlling here.

In *Mathiason*, the defendant, a parolee, was a suspect in a burglary case. He voluntarily presented himself at a state patrol office at the request of the investigating officer. The defendant was not placed under arrest. The interview took place behind closed doors. The defendant was advised that the police believed he was involved in the burglary and was further told that his fingerprints were found at the scene. The latter was a false statement. Within five minutes after he entered the office, defend-

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Id.*, at 444, 86 S.Ct. at 1612.

3. *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1964).

4. See, e. g., *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (defendant in prison when interrogated regarding income

tax fraud). However, in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), an interview in a private residence when defendant not under arrest held not "custodial."

5. 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

ant admitted he had taken the property. He was then advised of his *Miranda* rights and gave a taped confession.

The Supreme Court stated:

In the present case, however, there is no indication that the questioning took place in a context where respondent's freedom to depart was restricted in any way. He came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½–hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."

Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda*, by its terms was made applicable, and to which it is limited.[6] [Emphasis in original.]

■ The factual situation in this case is virtually indistinguishable from that in *Mathiason*. Defendant here presented himself at the request of the detectives. He

was not placed under arrest. Although the interview here lasted longer, it is significant that defendant made no incriminating statements until *after* he had been given the *Miranda* warnings. Following the interview defendant, as noted, did leave the sheriff's office at the Metropolitan Hall of Justice. We therefore hold that there is sufficient evidence in the record to sustain the District Court's ruling that defendant's statements were not rendered inadmissible because the *Miranda* warnings were not given at the outset of the interview.

We turn now to the issue of the voluntariness of defendant's waiver of his right to remain silent and his right to counsel.

■ As was pointed out, *ante*, approximately half way through the interview defendant was read the *Miranda* warnings. After each element of the warning was read he was asked if he understood what he had been told. Each time he responded "yes." In addition to stating he did not need an attorney defendant responded that he had not been threatened, coerced or promised anything to induce him to make a statement. Then the following dialogue took place:

Q. Do you understand each of these rights that I've explained to you?

A. Yes, sir.

Q. Having these rights in mind, do you wish to talk to us now about the incident?

A. Yeah.

■ We agree with defendant that " 'Courts should indulge every reasonable presumption against waiver' of fundamental constitutional rights."[7] We also recognize that defendant presented evidence that his mental functioning may be somewhat impaired and that he may be more susceptible to pressure and suggestion that the average person. However, because of the advantaged position of the District Court whose duty and prerogative it is to determine the question of the voluntariness of a

6. *Id.*, at 495, 97 S.Ct. at 714.

7. Quoting from *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

waiver of the right to remain silent and to have counsel,[8] we reverse such a determination only upon a showing that it is clearly in error[9] or that there was an abuse of discretion by the District Court.[10]

Affirmed.

CROCKETT, C. J., and HALL and STEWART, JJ., concur.

MAUGHAN, J., concurs in the result.

**8.** *State v. Winkle*, Utah, 535 P.2d 82 (1975); *State v. Kelsey*, Utah, 532 P.2d 1001 (1975).

**9.** *State v. Winkle, supra; State v. Scandrett*, 24 Utah 2d 202, 468 P.2d 639 (1970).

**10.** *State v. Ashdown*, 5 Utah 2d 59, 296 P.2d 726 (1956), aff'd 357 U.S. 426, 78 S.Ct. 426, 2 L.Ed.2d 1443.