Barnette Samuels was convicted for the murder of Brownell Wyatt and sentenced to twenty-three years' imprisonment. On this appeal from that conviction four issues are raised.
 I
During the selection of the jury the following occurred:
 "MR. TURBERVILLE [Defense Counsel]: Your Honor, the State's first three strikes have been people of the black race, and we have a defendant who is black. There are eight blacks on the venire and there are nineteen whites. My experience with this particular prosecutor has been that he in all the cases that I've had he has used all his strikes to strike blacks when there was a black defendant. I feel like he is denying the defendant the benefit of a trial by his peers and due process and equal justice. And we ask that a new venire be drawn or a mistrial be declared, or in the alternative *Page 368 
that he be admonished not to remove all blacks from the venire.
"THE COURT: Overruled.
"MR. TURBERVILLE: We except.
"(Jury striking process continued.)"
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965), established a presumption that the prosecutor exercises peremptory challenges only to obtain a fair and impartial jury.Swain was overruled in Batson v. Kentucky, ___ U.S. ___,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), holding that the "use of peremptory challenges in a given case may, but does not necessarily, raise an inference, which the prosecutor carries the burden of refuting, that his strikes were based on the belief that no black citizen could be a satisfactory juror or fairly try a black defendant." Batson, ___ U.S. at ___,106 S.Ct. at 1725 (Justice White, concurring).
 "These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482] at 494, 97 S.Ct., [1272] at 1280, [51 L.Ed.2d 498] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Avery v. Georgia, supra, 345 U.S. [559] at 562, 73 S.Ct., [891] at 892 [97 L.Ed. 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
 "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
 "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Batson, ___ U.S. at ___, 106 S.Ct. at 1722-23.
In Ex parte Jackson [Ms. 84-1112, December 19, 1986] (Ala. 1986), the Alabama Supreme Court held that Batson was to be applied retroactively as a matter of state constitutional law. Consequently, on the authority of Jackson, we remand this cause to the trial court. If the trial court determines that the facts establish a prima facie case of purposeful discrimination under Batson and the prosecution does not come forward with race-neutral explanations for its strikes, then the defendant is entitled to a new trial.
 II
The defendant argues that the trial judge erred in refusing to allow defense counsel to question the victim's representative about her relation to the victim.
The Alabama Legislature enacted the Crime Victims' Court Attendance Act, finding that "it is essential to the fair and impartial administration of justice that a victim of a criminal offense be afforded a reasonable opportunity to attend any trial *Page 369 
or hearing . . . which in any way pertains to such offense." Alabama Code 1975, § 15-14-51(a) (1986 Cumulative Supplement). Section 15-14-56 specifically provides that a representative may be appointed when the victim is unable to attend:
 "(a) Whenever a victim is unable to attend such trial or hearing or any portion thereof by reason of death; disability; hardship; incapacity; physical, mental, or emotional condition; age; or other inability, the victim, the victim's guardian or the victim's family may select a representative who shall be entitled to exercise any right granted to the victim, pursuant to the provisions of this article.
 (b) Provided, however, in the event of a dispute, the court in its discretion may designate such representative."
Brownell Wyatt, the victim, was twenty-nine years old when she was killed. Florence Louise Whiteside was the prosecution's first witness and testified that Brownell was her daughter and that she was dead.
On cross-examination, defense counsel sought to prove that Mrs. Whiteside was Brownell's biological mother but not her legal mother because Brownell had been adopted at an "early age" and because "adoption cuts off all legal rights and obligations of the biological mother to the child." Appellant's brief, p. 24. The trial judge refused to allow defense counsel to inquire into Mrs. Whiteside's relationship to Brownell, finding that such inquiry was "irrelevant and immaterial. The age of the victim and what she's doing at six or seven is not quite apropos to this incident we're trying." We agree.
During the trial, Mrs. Whiteside sat at the table with the prosecutor. The defendant argues that, because Brownell had been adopted, Mrs. Whiteside "was not the proper party under the Crime Victims' Court Attendance Act, to represent the victim during the trial." Appellant's brief, p. 24.
Section 15-14-56(b), set out above, provides that, in the event of a dispute as to who shall represent the victim, the court may designate a representative. In any event, this is not a jury question or a ground for appeal. Section 15-14-57
provides: "The failure of a victim or a person designated to represent the victim to exercise any right granted by the provisions of this article shall not be cause or ground for an appeal of a conviction by a defendant or for any court to set aside, reverse or remand a criminal conviction."
Even if Mrs. Whiteside were not the victim's representative, her presence in the courtroom would not constitute error. "The exclusion of all witnesses, except the one under examination, from the courtroom during the trial is not a matter of right, but is one within the sound discretion of the trial judge."Teague v. State, 245 Ala. 339, 340, 16 So.2d 877 (1944). See also Elrod v. State, 281 Ala. 331, 335, 202 So.2d 539 (1967).
The defendant's right of cross-examination was not infringed because the trial judge "has the discretion reasonably to limit the range of cross-examination in respect to collateral and irrelevant matters." C. Gamble, McElroy's Alabama Evidence § 136.01 (3d ed. 1977); Lucky Manufacturing Company v.Activation, Inc., 406 So.2d 900, 904 (Ala. 1981).
 III
The trial judge properly refused to give the following requested jury instruction stating the defendant's theory of the case:
 "It is the Defendant's theory of the case that the victim, Brownell Wyatt, accidently moved into the open knife. He had no intention of harming the victim and did not willingly insert the knife in her body. Furthermore, the Defendant did all he could to get her treatment and save her life after it became known she was cut."
This charge was properly refused because it does not state that the theory was based on evidence, Bell v. State,473 So.2d 622, 623 (Ala.Cr.App. 1985), and is argumentative. Dobbins v.State, 274 Ala. 524, 528, 149 So.2d 814 (1963). The trial court will not be put in error for refusing requested *Page 370 
charges which are merely attempts to answer the arguments of the prosecutor. Smith v. State, 165 Ala. 74, 51 So. 632, 638
(1910).
The trial judge instructed the jury on murder, manslaughter, and criminally negligent homicide. We find no error in the refusal of this requested charge.
 IV
The Due Process Clause of the Fourteenth Amendment "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965,1970, 85 L.Ed.2d 344 (1985). This principle was not violated by the following oral instruction of the trial judge:
 "Ladies and gentlemen, you've sent me out a question: Can a moment of intent be enough for murder? My answer to that is first, of course, you all know, the State has the burden to convince you beyond a reasonable doubt that there was intent to strike the blow or do an act. The law says that if an accused had time to think and did think even for a moment after having thought and then done the act, that is sufficient to form an intent. To put it another way: There need not be, the State need not prove that he pondered or that the accused reflected or stopped an appreciable length of time to form the intent, as long as the intent is formed before the act is done, which is the blow or whatever. And the law says also that a person may enter into a difficulty with the other person without any intent but in the process an intent is formed to do an act, and as I said before, even for a moment, the cases say that if he formed that intent before you actually do the act that produces the injury or the death, then that is sufficient."
This construction does not "put a burden on the defendant to rebut the possibility of intent." The challenged portion of the instruction does not create a mandatory presumption or even a permissive inference. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Franklin, 471 U.S. at 314, 105 S.Ct. at 1971. The specific language challenged could not reasonably have been understood as creating a presumption that relieves the State of its burden of proof on the element of intent. The instruction was a correct statement of the law as intent could have been formed while the accused grasped the knife with which the fatal stab wound was inflicted. White v. State, 236 Ala. 124, 125,181 So. 109 (1938); Franklin v. State, 145 Ala. 669,39 So. 979, 981 (1906).
This cause is remanded for further proceedings.
REMANDED FOR FURTHER PROCEEDINGS.
All Judges concur.