* Reporter's note: The action of the Court of Criminal Appeals in this case was reported under the style T.A.B. v. State.
Thomas Andrew Brown, Jr., a 16-year-old, was arrested and charged by delinquency petition in the Juvenile Court of Cullman County with the murder of Robert Earl Sides. The State filed a motion seeking to transfer Brown to the Circuit Court of Cullman County for prosecution as an adult. After a hearing, the juvenile court entered an order of transfer directing that Brown be tried as an adult. Brown appealed to the Court of Criminal Appeals, which affirmed the order of transfer, without opinion, 537 So.2d 78. We granted Brown's petition for certiorari.
On January 12, 1988, the body of Robert Earl Sides was discovered behind the steering wheel of his pickup truck, wrapped in a sleeping bag and with a garbage bag over his head. The coroner pronounced the victim dead at the scene and determined that the cause of death was stab wounds to the throat. The victim's family and Brown were questioned by the police. Brown, after being read his rights under Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as well as his rights under the Alabama Rules of Juvenile Procedure, gave a detailed confession of his involvement in the murder of Sides.
Following a detention hearing on January 14, 1988, the juvenile court determined that Brown was in need of continued detention and committed him to the Robert Neaves Detention Center in Huntsville, Alabama. On February 8, 1988, the juvenile court committed Brown to the care and custody of the Department of Youth Services for preadjudication and predispositional evaluation. That order was amended by the juvenile court to provide that Brown *Page 742 
be committed to the Taylor Hardin Secure Medical Facility for evaluation of his competency to stand trial and of his mental state at the time of the alleged offense. While at the facility, Brown was interviewed and psychologically tested. The report prepared by the staff at the facility states, inter alia:
 "Cognitively, Mr. Brown was oriented to person, place, time, and situation. His immediate, recent, and remote memories were all intact. Concentration and attention appeared adequate, and he was not distractible. He seemed to have some difficulties in his abstract reasoning abilities. Thinking was concrete. His judgment for hypothetical situations was adequate. Overall, judgment was believed to be fair to poor.
". . . .
 "Mr. Brown was administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) as part of this evaluation. On this administration of the WAIS-R, Mr. Brown obtained a Verbal Scale I.Q. score of 78, a Performance Scale I.Q. score of 75, and a Full Scale I.Q. score of 76. . . . Mr. Brown exhibited no significant differences between his Verbal and Performance Scale scores. He exhibited one strength relative to his overall performance on a Verbal Subtest generally believed to measure comprehension and judgment for social situations.
His score on this Subtest was within the average range as compared to his scores on other Verbal and Performance Subtests which were all significantly below average.
 "Mr. Brown was assessed with respect to his ability to complete the MMPI for further evaluation of his psychological functioning. Although he was unable to read MMPI items, he was capable of understanding items read to him as assessed by having him rephrase approximately 10 of the initial items read aloud.
 "In summary, Mr. Brown is an adolescent who presently exhibits no symptoms associated with a major psychiatric illness or thought disorder, nor is there any indication from his history that he has ever suffered from a thought disorder. His intellectual functioning is within the Borderline range of intelligence according to Wechsler standards. (Emphasis added.)
 "Mr. Brown was evaluated as to his ability to assume the role of defendant. The Competency to Stand Trial Assessment Instrument (CAI) was used to assist in this evaluation. Mr. Brown exhibited adequate understanding of the nature of the charge against him and the nature and range of possible penalties should he be found guilty of the charge.. . . He was cognizant of various legal strategies for his defense, including the concept of plea bargaining. Based on his behavior during the interview and on his ability to disclose to the examiner pertinent facts regarding the alleged offense, he was judged to be able to form an adequate working relationship with his attorney and the capacity to assist his attorney in his own defense. He exhibited no self-defeating motivation in the legal sense, and should be capable of challenging prosecution witnesses and/or testifying on his behalf. He should present no unmanageable behavior during legal proceedings. In summary, Mr. Brown is currently able to assume the role of defendant."
At the transfer hearing, the State introduced Brown's confession. Brown argues that the juvenile court erred in admitting this confession because, he says, it was obtained in violation of his Miranda rights.
Johnny Nesmith, an agent with the Alabama Bureau of Investigation, testified that he talked to Brown at the Florence Police Department and that prior to any questioning he read Brown his constitutional rights from a Miranda card. When asked if he understood his rights, Brown replied, "Yes." Nesmith then read Brown his juvenile rights from a juvenile rights *Page 743 
waiver form, and Nesmith asked Brown if he understood those rights, and Brown again replied, "Yes." Nesmith, thereafter, handed the form to Brown, who appeared to read it before signing it. No promises, rough language, coercion, or overbearing police conduct was used in obtaining Brown's confession.
In opposition to the introduction of the confession at the transfer hearing, Brown's attorney called Dr. Roger Rinn, a licensed psychologist, who testified that he had examined Brown at the request of the Madison County Juvenile Court. Dr. Rinn concluded that Brown had an I.Q. of 72, which falls within the range of borderline intelligence. He further determined that Brown had a mental age of approximately 12 years and 2 months, and that his reading ability was below a third grade level. Dr. Rinn stated that while Brown understood the nature of the charges against him and knew right from wrong, he did not think a person with Brown's intelligence and reading level could understand the significance of the waiver of his right against self incrimination. Dr. Rinn did indicate, however, that he thought Brown could understand the meaning of the statement, "You're not required to say anything and anything you say may be used against you." Dr. Rinn also stated that Brown knew the "short term implication of the statement, 'You have the right to remain silent.' "
Under the Constitution, any suspect of a crime is guaranteed the right to assistance of counsel and the right to remain silent during in-custody police interrogation, and any statement obtained in derogation of those rights is inadmissible in a subsequent criminal prosecution. Miranda v.Arizona, supra. The suspect may waive these rights, provided the waiver is knowingly and intelligently made. Johnson v.Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
However, as the United States Supreme Court cautioned inMiranda, 384 U.S. at 475, 86 S.Ct. at 1628:
 "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, n. 14 [84 S.Ct. 1758, 1765, n. 14, 12 L.Ed.2d 977]."
The evidence presented by the State clearly established that Brown was informed of his Miranda rights as well as his juvenile rights, and that, after being informed, he signed a waiver of those rights. The question presented by this petition for writ of certiorari is whether the waiver was knowingly, intelligently, and voluntarily made so as to uphold the juvenile court's order admitting Brown's confession.
 "[I]n most cases, the defendant's mental deficiency will be but one factor to be considered in the 'totality of the circumstances' surrounding the confession. In some cases, however, it may be the most important or controlling factor. See e.g. Dover v. State, 227 So.2d 296 (Miss. 1969); People v. Langston, 57 Mich. App. 666, 226 N.W.2d 686
(1975). See also Redwine v. State, 258 Ala. 196, 61 So.2d 724 (1952). The importance of this factor increases with the degree of the accused's mental retardation because he must be able to understand his right to remain silent and to an attorney before he can waive them. It is a knowing and intelligent waiver that is required. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)." (Emphasis in original.)
Garrett v. State, 369 So.2d 833, 836 (Ala. 1979).
In Garrett, supra, the defendant was mentally retarded, with an I.Q. of 50, and was classified by his teachers as trainable, but not educable. The Court held that "[a]lthough such a degree of mental retardation in a given case may be controlling, we need not so hold here because we find from the totality of the circumstances that the confession was involuntary." *Page 744 369 So.2d at 836. In Hines v. State, 384 So.2d 1171 (Ala.Crim.App.), cert. denied, 384 So.2d 1184 (Ala. 1980), the statement of a highly suggestible retarded defendant, who had an I.Q. of 39, was excluded. The mental deficiency of the defendant in Hines
was "extreme," and that fact justified a consideration of mental deficiency as the "most important and controlling factor to be considered." 384 So.2d at 1181. Despite the fact that Brown had an I.Q. of 72, he had been consistently promoted in school and had made it to the ninth grade before dropping out. Unlike the defendants in Garrett and Hines, Brown was not mentally retarded, but was within the borderline range of intelligence.
In Elrod v. State, 281 Ala. 331, 334, 202 So.2d 539, 542
(1967), this Court stated:
 "Accused's intelligence, character and situation at the time of the confession of the crime charged are important considerations in determining whether the confession was voluntary, but the fact that accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary. State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726 [1956], affirmed 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443 [1958]."
This Court is limited to determining whether the juvenile court abused its discretion, considering the totality of the circumstances involved, in admitting Brown's confession at the transfer hearing. After careful consideration of all the circumstances, we are not persuaded that the juvenile court abused its discretion in admitting the confession. There was no evidence presented at the hearing of any overbearing police conduct, coercion on the part of the police, trickery, rough language, threats, or exhausting questioning over an extended period of time. In fact, after reading Brown his rights, the investigating officers told Brown that he was not under arrest and that he was free to walk out of the room at any time. Brown scored higher on a test generally believed to measure comprehension and judgment for social situations than he did in his overall intelligence test. Dr. Rinn testified that Brown could understand the meaning of the statements "You're not required to say anything and anything you say may be used against you" and "You have the right to remain silent." After examining the record, we cannot find that the juvenile court abused its discretion in finding the confession admissible.
Brown also contends that he is entitled to a new transfer hearing because, he says, the juvenile court, in conducting the transfer hearing, did not comply with the requirements of Rule 24, Alabama Rules of Juvenile Procedure. In Ex parte Anonymous,466 So.2d 81 (Ala. 1984), this Court addressed the requirements of Rule 24, A.R.J.P.:
 "The procedural requirements for juvenile hearings are prescribed by Rule 24 of the Alabama Rules of Juvenile Procedure. These requirements were promulgated with the protection of the juvenile's due process rights in mind.
 "The first sentence of Rule 24 states that the hearing shall commence with the court's verifying that all necessary parties are present and ready to proceed. This verification is to be spread upon the record. . . . Next, the court (as per Rule 24) is required to explain several items to the parties:
"1. The child's rights during the proceedings.
"2. The substance of the petition.
 "3. The specific allegations contained in the petition.
"4. The nature of the proceedings.
 "5. The alternatives available to the court should the allegations contained in the petition be admitted or proven."
The record in the instant case shows that the juvenile court substantially complied with all the requirements of Rule 24 in conducting the transfer hearing, except for explaining Brown's rights during the proceeding. The failure of the trial court to give the juvenile the explanations required by Rule 24 will constitute reversible error only if there was a proper and timely objection. Shedd v. State, 505 So.2d 1306
(Ala.Crim.App. 1987); Newton v. State, 474 So.2d 775 (Ala.Crim.App. 1985). Here, since *Page 745 
there was no objection, no error was preserved below, and error cannot be asserted for the first time on appeal. Ex parteGilchrist, 466 So.2d 991 (Ala. 1985).
Brown next contends that the juvenile court's order transferring him to the circuit court for adult prosecution was not supported by the evidence. This contention is without merit. A transferring court is required by Alabama Code 1975, § 12-15-34(d), to consider evidence of six specific factors in determining whether to grant a motion to transfer. Mayne v.State, 416 So.2d 741, 742 (Ala. 1982). These factors are:
"1. The nature of the present alleged offense;
 "2. The extent and nature of the child's prior delinquency record.
 "3. The nature of past treatment efforts and the nature of the child's response to such efforts;
"4. Demeanor;
 "5. The extent and nature of the child's physical and mental maturity; and
 "6. The interests of the community and of the child requiring that the child be placed under legal restraint or discipline."
Code 1975, § 12-15-34(d).
The transfer order clearly stated that the court considered each of the six factors enumerated in the statute in reaching its decision. It has been previously held that "a mere restatement of the factors set out in the statute is sufficient" to meet the requirements of § 12-15-34(d). Smith v.State, 475 So.2d 633, 635 (Ala.Crim.App. 1985); Brown v. State,353 So.2d 1384 (Ala. 1977). A reading of the order clearly demonstrates that each factor was considered in this case.
In reviewing an order transferring a juvenile to the circuit court for criminal prosecution as an adult, this Court will not interfere with the order unless it is clearly erroneous.Williams v. State, 361 So.2d 1157 (Ala. 1978). The purpose of the transfer hearing is to determine whether there is probable cause for believing that the allegations are true and not to determine guilt or innocence. Snow v. State, 423 So.2d 220, 222
(Ala. 1982); Bragg v. State, 416 So.2d 715, 716 (Ala. 1982). Our review convinces us that the juvenile court considered and weighed each factor listed in § 12-15-34 and made a conscientious and comprehensive determination that the juvenile should be transferred to the circuit court for criminal prosecution as an adult. The juvenile court's order transferring Brown to the circuit court is, therefore, affirmed.
AFFIRMED.
JONES, SHORES, ADAMS and KENNEDY, JJ., concur.