650 So.2d 571 (1994)
D.D.A.
v.
STATE.
CR 92-2011.
Court of Criminal Appeals of Alabama.
June 17, 1994.
Rehearing Denied August 19, 1994.
Certiorari Denied October 21, 1994.
*573 Joseph H. Hilley and William N. Clark, Birmingham, for appellant.
James H. Evans, Atty. Gen., and Cecil Brendle, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1931723.
BOWEN, Presiding Judge.
The appellant, 17-year-old D.D.A., was charged by petition with intentionally causing the death of another during a drive-by shooting, a capital offense under Ala.Code 1975, § 13A-5-40(a)(18). After a hearing on the State's motion to transfer, the Juvenile Court of Etowah County found probable cause to believe that the appellant had committed the offense of reckless murder and ordered him transferred to circuit court for criminal prosecution as an adult. The appellant raises five issues in this appeal from the juvenile court's order.

I.
The appellant contends that the juvenile court erred in denying his motion to dismiss the delinquency petition on the grounds that the court had previously entered a "consent decree" and had allowed the delinquency petition to expire.
Section 12-15-1(6), Ala.Code 1975, defines a consent decree in juvenile proceedings as "[a]n order, entered after the filing of a delinquency petition and before the entry of an adjudication order, suspending the proceedings and continuing the case of the child under supervision in the child's own home, under terms and conditions agreed to by all parties concerned."
Rule 16, A.R.Juv.P., states:
"(A) At any time after the filing of a delinquency or in need of supervision petition and before the entry of an adjudication order, the court, following advisement of rights to the child and his parents or custodian including the right to counsel at this and other stages of the proceeding, may suspend the proceedings, and continue the child under supervision under terms and conditions negotiated with probation services and agreed to by all parties affected; provided, however, that the judge may continue the child under supervision over the objection of the prosecutor. The court's order continuing the child under supervision shall be known as a consent decree.
"(B) Where the child objects to a consent decree, the court shall proceed to findings, adjudication and disposition. Where the child does not object, but an objection is made by the prosecutor after consultation with probation services, the court shall, after considering the objections and reasons therefor, proceed to determine whether it is appropriate to enter a consent decree.
"(C) A consent decree shall remain in force for six months unless the child is discharged sooner by the court. Upon application of probation services or other agency supervising the child, made before expiration of the six-month period, a consent decree may be extended by the court for an additional six months.
"(D) If prior to discharge by the probation services or expiration of the consent decree, a new delinquency or in need of supervision petition is filed against the child, or the child otherwise fails to fulfill express terms and conditions of the decree, *574 the petition under which the child was continued under supervision may be reinstated and the case may proceed to adjudication just as if the consent decree had never been entered.
"(E) The petition of a child who is discharged or who completes a period of continuance under supervision without reinstatement of the original delinquency or in need of supervision petition shall be dismissed and the child shall not again be proceeded against in any court for the same offense based upon the same conduct."
The commentary to Rule 16 states:
"This rule permits the court on its own motion or on the motion of the party to suspend the proceedings and continue the child under supervision at any time before the entry of finding with respect to the allegations in the petition. This will not only expedite the administration of justice but also can eliminate the need of a finding of delinquency which may cause problems for the child later in life. A number of provisions included are designed not only to protect the child but also to protect the public. This section should eliminate the necessity of the court carrying cases on an informal or unofficial basis after a petition has been filed."
The juvenile court entered an order on August 13, 1992, postponing the commencement of proceedings in the case. The appellant argues that this order was a consent decree within the meaning of Rule 16, A.R.Juv.P., and as such allowed the delinquency petition to expire after six months in the absence of a renewal by the State. The appellant asserts that "once the original six months expired the delinquency petition was automatically dismissed and the juvenile court was without jurisdiction to reinstate the original petition or to conduct further hearings or proceedings on the original petition." Appellant's brief at 36.
The delinquency petition charging the appellant with the offense of capital murder was filed on August 13, 1992, and the case was set for a "detention hearing."[1] C.R. 8, 1. However, before this hearing began the appellant and the State agreed to continue the proceedings. The juvenile court issued the following order:
"Case being set for a detention hearing, and after consultation by counsel with their clients, counsel for all parties, including the State, agree that this detention hearing be continued as to such time as any of the parties may move for a hearing on such motion as they may file. It is further stipulated that the child shall remain in detention pending further hearings and orders of the Court for the reason that his release may result in substantial harm to the child. By this agreement and stipulation there is no admission of probable cause on the part of the child." C.R. 1.
Apparently, there is no transcript of the proceedings held on August 13, 1992.
In November 1992, the appellant filed a motion to suppress and a motion to require production or disclosure. C.R. 12-18. Both of those motions anticipated the appellant's trial. The appellant also filed a motion to dismiss the petition on various constitutional grounds. C.R. 19-21.
On February 26, 1993, the State filed a "motion requesting transfer of child for criminal prosecution." C.R. 21. On March 23, 1993, the appellant again moved to dismiss the petition. C.R. 31. In that motion the appellant argued that the August 13, 1992, order of the juvenile court was a consent decree within the meaning of Rule 16, A.R.Juv.P., and that since more than six months had expired without the filing of a new petition or without any attempt by the State to extend the continuance beyond the original six months, the petition had to be dismissed with prejudice.
The appellant's motion to dismiss was heard by the juvenile court on March 26, 1993, prior to the commencement of the transfer hearing. At the conclusion of that *575 hearing, the juvenile court denied the motion to dismiss:
"[I]t is a fact that the statute, the Code, defines consent decree, and in this particular situation, that order entered on the 13th of August of '92 does not meet the definition of a consent decree. Not only doesn't meet the definition, I don't think it's the spirit of that order. I don't really see how either side could argue it's the spirit of that order that it be a consent decree. A consent decree, of course, being a decree that's entered by the Court that does outline some specific conditions, somewhat like a suspended prosecution, like a child if you are able to do `A,' `B,' `C,' `D,' `E,' and `F,' then there's a commitment on behalf of the State that these proceedings will not go any further than that. That would be the end of this, that the hearing would not be carried to an adjudication that would result in a juvenile record of conviction. That order that Judge Lewis has entered on the 13th of August is not that kind of an order. There's another rule in the Rules of Juvenile Procedure, and again, we're talking about rules of procedure here as well, that says that the proceedings must go along at a reasonable pace. And in light of what has been said and what is in the file, it is felt like that this proceeding has progressed at a reasonable pace.
"Now, that's certainly a flexible term, it's akin to trying to argue the speedy trial issues in a case. What is reasonable depends on a lot of circumstances. But the circumstances in this case give no indication that this courtthat this matter has not progressed at a reasonable pace, and that by definition, that order of 8/13 is not a consent decree. So, the motion would be denied on this case." R. 42-43, March 26, 1993.[2]
We agree with the conclusion of the trial judge.
On April 16, 1993, the appellant filed a petition for a writ of mandamus raising this issue in the Court of Criminal Appeals. That petition was denied on May 4, 1993, on authority of Ex parte Spears, 621 So.2d 1255, 1258 (Ala.1993), which held that "mandamus review will generally be restricted in the future to those cases where one of the recognized exceptions applies, or to those extraordinary cases where the rights of the parties cannot be adequately protected by appellate review of a final judgment." See Ex parte D.D.A., 636 So.2d 482 (Ala.Cr.App.1993) (Table). The Alabama Supreme Court, without opinion, denied certiorari review on August 27, 1993.
In the present case, the juvenile court's August 13 order did "suspend" the proceedings to the extent that it ordered that the proceedings be "continued as to such time as any of the parties may move for a hearing." However, that order did not contain any "terms and conditions negotiated with probation services and agreed to by all parties affected" regarding the appellant's supervision in lieu of adjudication by the trial court. See Rule 16(A), A.R.Juv.P. There is no indication in the record that a representative from probation services was present during the discussions preceding the court's order. The order did not place the burden on probation services to supervise the appellant or to report his progress to the court before the expiration of six months. See Rule 16(C), A.R.Juv.P. There were no conditions to be met by the appellant. It is the finding of this Court that the record provides no reasonable inference that the intent of this order was to "expedite the administration of justice" or to "eliminate the need of a finding of delinquency." See Comment to Rule 16.
This finding is supported by the affidavit of H. Keith Pitts, Chief Deputy District Attorney, which is a part of the State's answer to the petition for a writ of mandamus, which was ordered by this Court and which is contained in the record on appeal. In that affidavit, Pitts asserts that after the appellant was taken into custody, the statutorily *576 mandated "72-hour" hearing was scheduled for August 12, 1992,[3] in juvenile court.
"Appearing at such hearing as retained counsel for [D.D.A.] were Hon. William N. Clark and Hon. Joe Hilley, both of the law firm of Redden, Mills & Clark, Birmingham, Alabama. Prior to any hearing, an informal conference was held between said defense attorneys and the undersigned. At such time, Mr. Clark stated that certain purported threats had been made and received by the family of [D.D.A.] relative to possible acts of reprisal against them by friends of the minor children of the decedent, Gary Myrick. Mr. Clark further stated then that he felt it would be in his client's best interest that he not be released and that he be retained in detention for, if no other reason, his own protection. Further discussion was held concerning future setting of any necessary hearing in the proceeding, whether it be a final dispositional hearing in juvenile court or a hearing on any motion that might later be filed by the State to transfer [D.D.A.] to the Circuit Court for further prosecution as an adult. It was noted then that, given the nature of the case, the short `two days' period that had elapsed since the decedent's death, and the desire of both parties to await accumulation of all reports relative to forensic evidence, the next hearing would be, by necessity, held on a much later date than as normal. At that time, it was agreed between the attorneys that [D.D.A.] would be continued in detention pending the next hearing, such hearing to be one of the two types as discussed, but that defendant would not be stipulating probable cause. At no time was any representative of probation services present. At no time was any discussion held concerning such further detention being a part of the terms of `consent decree.' In fact, the only discussion concerned the two possible options as described hereinabove for further action in this case.
"4. On at least one subsequent occasion, and prior to the filing of a motion to transfer the case to Circuit Court, both Mr. Clark and Mr. Hilley appeared in the office of the undersigned, inquiring whether or not such a motion to transfer was being contemplated. At that time, Mr. Clark requested that, prior to my filing such a motion, he be allowed to discuss the matter with the District Attorney, Hon. James E. Hedgspeth, Jr. On one other subsequent occasion, Mr. Hilley appeared unannounced and renewed this request.
"5. In January, 1993, I was in contact with Mr. Hilley and advised him that I was, in fact, filing a motion to transfer prosecution to Circuit Court and that a tentative date for such hearing had been obtained from Hon. Wayne Owen, District Judge, on February 5, 1993 (less than six months since the scheduled detention hearing), only to be advised that this date was unacceptable due to a conflict of the court schedule of Mr. Clark. Mr. Hilley advised then that he or Mr. Clark would get back in touch with me as to possible dates for this hearing that would not be in conflict with either of their court schedules. On February 26, 1993, having heard nothing further from defense counsel as to such suitable dates, Motion Requesting Transfer of Child for Criminal Prosecution was filed, Judge Owen then signing an Order setting such Motion for hearing on March 26, 1993.
"6. On March 23, 1993, defense counsel filed a motion seeking to dismiss the delinquency petition against [D.D.A.], asserting as grounds for their motion that [D.D.A.] had been ... held pursuant to a consent decree pursuant to Rule 16, that more than six months had expired and asserting that the juvenile court was obligated to dismiss the pending petition." C.R. 70-1.
There is nothing in the record to dispute these contentions.
The plain language of the order and these undisputed facts clearly show that the appellant was not being held in juvenile detention pursuant to a consent decree and Rule 16, A.R.Juv.P., was not applicable.

*577 II.
The appellant contends that the juvenile court erred in transferring the appellant to circuit court based on its finding of probable cause to believe that the appellant committed reckless murder. He argues that reckless murder was not charged in the petition and is not a lesser included offense of the capital murder charged in the petition.
The delinquency petition charged that the appellant committed the capital offense defined in Ala.Code 1975, § 13A-5-40(a)(18) "[m]urder in which the victim is killed by a deadly weapon fired from a motor vehicle." The petition charged that the appellant:
"[D]id commit the delinquent act of CAPITAL MURDER, A CLASS `A' FELONY, in that the said child, [D.D.A.], did intentionally cause the death of another person, to wit: Gary Myrick, by shooting him with a deadly weapon, to wit: a rifle, fired from a motor vehicle then occupied by the said child, [D.D.A.], in violation of § 13A-5-40(a)(18) of the Code of Alabama, contrary to law and against the peace and dignity of the State of Alabama." C.R. 8.
In its certification order, the juvenile court found probable cause that the appellant committed reckless murder:
"Probable cause is found that the child committed the delinquent act of murder, in that he engaged in conduct manifesting extreme indifference [to] human life by recklessly engaging in conduct which created a grave risk of death to a person other than himself, and thereby caused the death of another person, Gary Myrick." C.R. 128.
Although this issue was never presented to the juvenile court and is raised for the first time on appeal, the appellant contends that a specific objection was not necessary to preserve this issue for appellate review. The general rule is that "[e]ven in juvenile cases, proper and timely objections are required." M.W. v. State, 571 So.2d 361, 362 (Ala.Cr.App.1990) (absent an objection appellant cannot complain on appeal that the admission of profile of youth report constituted error) (citing Ex parte Brown, 540 So.2d 740, 744-45 (Ala.1989). However, "Rule 52(b)[, A.R.Civ.P.,] provides an exemption from the requirement of invoking a ruling by the trial court on the issue of evidentiary insufficiency when written findings of fact are made." Ex parte Vaughn, 495 So.2d 83, 87 (Ala.1986) (adjudication of delinquency).
Furthermore, we find no error in the action of the juvenile court in transferring the appellant to circuit court on a charge of reckless murder where the petition charged the appellant with capital intentional murder. We find that, under the facts of this particular case, reckless murder is a lesser included offense of the capital offense defined in Ala. Code 1975, § 13A-5-40(a)(18).
The petition charged the appellant with intentionally causing the death of another during a drive-by shooting. Section § 13A-5-40(a)(18) makes capital the offense of "[m]urder in which the victim is killed by a deadly weapon fired from a motor vehicle." By definition, a murder must be intentional to constitute a capital offense. § 13A-5-40(b).
Section 13A-5-40(b), Code of Alabama 1975, provides:
"[T]he terms `murder' and `murder by the defendant' as used in this section to define capital offenses mean murder as defined in Section 13A-6-2(a)(1) [intentional murder], but not as defined in Section 13A-6-2(a)(2) [reckless murder] and (3) [felony murder]. Subject to the provisions of Section 13A-5-41 [authorizing a jury to find a defendant charged with a capital offense guilty of a lesser included offense], murder as defined in Section 13A-6-2(a)(2) [reckless murder] and (3) [felony murder], as well as murder as defined in Section 13A-6-2(1) [intentional murder] may be a lesser included offense of the capital offenses defined in subsection (a) of this section."
Section 13A-5-41, Ala.Code 1975, states:
"Subject to the provisions of section 13A-1-9(b), the jury may find a defendant indicted for a crime defined in section 13A-5-40(a) not guilty of the capital offense but guilty of a lesser included offense or offenses. Lesser included offenses shall be defined as provided in section 13A-1-9(a), and when there is a rational basis for *578 such a verdict, include but are not limited to, murder as defined in section 13A-6-2(a), and the accompanying other felony, if any, in the provision of section 13A-5-40(a) upon which the indictment is based." (Emphasis added)
Section 13A-1-9(b) states:
"(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
Section 13A-1-9(a) defines lesser included offenses as:
"(1) [An offense] established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
"(2) [An offense] consist[ing] of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
"(3) [An offense] specifically designated by statute as a lesser degree of the offense charged; or
"(4) [An offense] differ[ing] from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission." (Emphasis added.)
A person commits the crime of reckless murder if "[u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." Ala.Code 1975, § 13A-6-2(a)(2).
Firing a rifle from a moving motor vehicle toward a house constitutes reckless conduct as defined in Ala.Code 1975, § 13A-6-2(a)(2).
"[This section] requires the prosecution to prove conduct that manifests an extreme indifference to human life and not to the life of any particular person. The purpose of § 13A-6-2(a)(2) is to embrace those homicides caused by such acts as shooting a firearm into a crowd, throwing a timber from a roof onto a crowded street, or driving an automobile in a grossly wanton manner. See Northington v. State, 413 So.2d 1169 (Ala.Cr.App.1981), writ quashed, 413 So.2d 1172 (Ala.1982). This section was written in an attempt to define a degree of recklessness `that cannot be fairly distinguished from homicides committed purposely or knowingly.' Model Penal Code and Commentaries, § 210.02, comment 4 (1980), as quoted in Ex parte Weems, 463 So.2d 170, 172 (Ala.1984). Under the concept of reckless murder, the actor perceives a substantial and unjustified risk, but consciously disregards the risk of death."
Simmons v. State, 649 So.2d 1282, 1284 (Ala. 1994).
In connection with juvenile transfer proceedings, this Court has held:
"The juvenile court is only authorized to make a finding of probable cause concerning the specific act leading to the delinquency petition before transferring the juvenile for trial in Circuit Court. Boyd v. State, Ala., 341 So.2d 680 (1977). See also Government of the Virgin Islands v. Smith, 558 F.2d 691 (3[d] Cir.1977). Any adjudicatory finding of delinquency in the juvenile court that the juvenile had violated a criminal statute would cause jeopardy to attach [barring the juvenile's prosecution for that offense in adult court]."
Smith v. State, 368 So.2d 298, 301 (Ala.Cr. App.1978), cert. quashed, 368 So.2d 305 (Ala. 1979).
In Kinder v. State, 515 So.2d 55, 71 (Ala. Cr.App.1986), this Court stated:
"[A]t a transfer hearing, the juvenile court is limited to determine whether probable cause exists concerning specific acts and not whether the juvenile committed a criminal offense. On the other hand, the circuit court to which the cause is transferred may be limited to the consideration of the specific acts, behavior, or subject matter of the offense, but it is not limited to a specific named offense, as the juvenile court has not yet determined whether the juvenile committed a violation of a criminal law. Cf. State v. Knighton, 21 Ala.App. *579 330, 108 So. 85 (1926) (`when the grand jury is so empaneled and sworn, it becomes the supreme inquisitorial body of the county, and no preliminary act of any court or judge can limit its powers'; the jurisdiction of the circuit court was not interfered with by pendency of preliminary proceedings in the county court concerning the crime charged).
"It is clear that under the due process clause, the juvenile is entitled to notice of charges, both for the juvenile court hearing and the subsequent trial. The notice for the juvenile hearing `must be in writing and must contain the specific charge or allegations of fact on which the proceeding is to be based.... The test for the adequacy of the notice of charges is the same as in civil and criminal proceedings.' [George, Gault and the Juvenile Court Revolution 33 (1968)]." (Emphasis in original).
In Tolbert v. State, 598 So.2d 1011 (Ala.Cr. App.1991), the juvenile was charged by petition with noncapital murder and theft. The juvenile court certified the juvenile to stand trial as an adult after finding that probable cause existed to believe that the juvenile had committed those offenses. Tolbert, 598 So.2d at 1012. The juvenile was then indicted for capital murder. This Court found that, despite the juvenile court's finding regarding probable cause, the juvenile could be prosecuted in circuit court for a capital offense.
"The appellant argues that, according to Kinder, the state was limited to prosecuting him for the specific acts for which the juvenile court found probable cause: murder and theft of an automobile. However, the Alabama Supreme Court has held as follows:
"It is well recognized that a transfer hearing is not a hearing to adjudicate the guilt or innocence of the child accused of a crime but is, instead, a probable cause hearing to determine whether the child should be transferred out of the juvenile court for criminal prosecution as an adult."
Brown v. State, 353 So.2d 1384, 1387-88 (Ala. 1977) (citation omitted).
"We consider Kinder to stand for the proposition that the circuit court is `limited to the consideration of the specific acts, behavior, or subject matter of the offense....' Id. (Emphasis supplied.) `Behavior' and `subject matter' are sufficiently broad to encompass all thefts committed as part of the same factual transaction. Cf. Connolly v. State, 539 So.2d 436 (Ala.Cr.App.1988) (theft of several items as part of same factual and criminal transaction is one offense). All of the items in question were taken from the same victim in the same factual and criminal transaction. The appellant, thus, could have properly been indicted and tried for any offense based on his behavior during the transaction or on the subject matter of murder and theft. Cf. Snodgrass v. State, 273 Ind. 148, 406 N.E.2d 641, 643 (1980) (`"waiver [of the juvenile court's jurisdiction] ... on one charge ... has equal applicability to lesser-included offenses subsequently charged"') (quoting Simpson v. State, 269 Ind. 495, 381 N.E.2d 1229, 1232 (1978)); State v. Garcia, 93 N.M. 51, 596 P.2d 264 (1979) (indictment covering offenses arising from same transaction is proper); State v. Karow, 154 Wis.2d 375, 453 N.W.2d 181, 184 (Ct.App.1990), review denied, 457 N.W.2d 323 (1990) (allowing `the charging of lesser-included or related crimes once waiver has occurred'). But see Miller v. Quatsoe, 348 F.Supp. 764 (E.D.Wis.1972) (waiver only effective as to specific charge alleged); People v. Hoerle, 3 Mich.App. 693, 143 N.W.2d 593 (1966) (waiver for one offense does not allow prosecution for greater offense); Gibson v. State, 47 Wis.2d 810, 177 N.W.2d 912, 915 (1970) (juvenile court waives only `jurisdiction with respect to charges of delinquency that are actually before it'); 43 C.J.S., Infants § 200."
Tolbert, 598 So.2d at 1012-13.
Considering the fact that a transfer hearing is not a hearing to adjudicate guilt or innocence but rather is a probable cause hearing to determine whether the child should be transferred out of the juvenile court for criminal prosecution as an adult, we hold that a juvenile court may order the transfer of a juvenile to circuit court for *580 criminal prosecution as an adult upon a finding of probable cause to believe that the juvenile has committed a lesser included offense of the crime charged in the delinquency petition.

III.
The appellant contends that the juvenile court erred by finding probable cause to believe that he committed the offense of reckless murder.[4] He argues that the requisite disregard for a grave risk of danger was not shown. We disagree.
Matthew Ward and E.B. were the appellant's codefendants and accomplices. "[T]he uncorroborated testimony of an accomplice does provide a sufficient basis for a finding of probable cause. Gulledge v. State, 419 So.2d 219, 220 (Ala.1982)." D.L. v. State, 625 So.2d 1201, 1204 (Ala.Cr.App.1993).
E.B. testified that the day before the incident the appellant had commented that the next day several boys were going "to scare the Myrick boys." R. 88, 153, 159, March 26, 1993. E.B. stated that he, Ward, and the appellant took two SKS rifles, a .30 gauge shotgun, a .38 caliber pistol, and ammunition from underneath the appellant's parent's bed. He testified that he and Ward put the loaded guns in the trunk of the appellant's silver Nissan Maxima automobile. After discovering the location of the Myrick residence, the appellant let Ward drive his car, and the appellant took one of the SKS rifles and positioned himself to shoot at the house.
E.B. testified that the car made several passes by the house. On the first pass, only Ward, who was armed with a pistol, fired a shot because the appellant and E.B. could not make the rifles fire. R. 166 March 26, 1993. When the appellant and E.B. figured out how to fire the rifles, the appellant instructed Ward to drive past the house again, and the appellant aimed and fired approximately fifteen to eighteen times at the house. R. 128, March 26, 1993. E.B. stated that he saw the people outside the house diving for cover and that he saw a cow fall. R. 129-30, March 26, 1993. He stated that they fired no more shots after they saw the people in the yard. R. 181, March 26, 1993. When the appellant and his companions drove away, they did not know that someone had been shot. R. 182-83, March 26, 1993.
This testimony alone affords probable cause to believe that the appellant committed a reckless murder. "The textbook examples of universal malice are generally such acts as shooting into an occupied house or driving an automobile into a crowd." Napier v. State, 357 So.2d 1011, 1014 (Ala.1978).

IV.
The appellant contends that "there was no evidence indicating the `interest of child and community requiring that he be placed under legal restraint or discipline' ... [and] also that there was no evidence to support the finding regarding any of the [Ala.Code 1975, § 12-15-34(d)] criteria." Appellant's reply brief at 10. We disagree.
At the conclusion of the last hearing on the motion to transfer, the juvenile judge specifically found that "the State has met the burden of showing that it's in the best interest of the child and/or the public that this case be transferred to adult court." R. 126, September 2, 1993. The juvenile judge then stated: "The Court must take into consideration also, and they're listed here, and there's actually a laundry list of factors that we must consider. I've given you the Court's conclusion, but I must make some comment and recognize I must give a written order to the effect that the Court has considered each of the factors." R. 126-27, September 2, 1993. The certification order of the juvenile court specifically lists each of the six factors of Ala. Code 1975, § 12-15-34(d), and states that the court has considered each factor. C.R. 128-29.
"`"The decision to transfer a juvenile for prosecution as an adult is a judicial one,... involving a mandatory consideration of each of the factors enumerated in Section 12-15-34(d).... While `legislation compels consideration of each of the six factors,' *581 Reeves [v. State, 419 So.2d 217, 218 (Ala.1982)], the weight to be given each of those factors in balancing the interests of the juvenile and society must be left to the sound discretion of the juvenile court judge. Even though some of the factors may indicate that it would be in the best interest of the child and the public to treat the youth as a juvenile, the judge may still order treatment as an adult after weighing all the factors and circumstances involved."
"....
"`... The trial judge can assign appropriate weight to the six factors listed in § 12-15-34(d) as well as other relevant circumstances. The statute does not require that specific weights be assigned to different factors and circumstances. Consequently, the trial judge is free to consider each case individually and balance the particular circumstances involved.'

"Williams v. State, 494 So.2d 887, 890 (Ala. Cr.App.1986) (emphasis in original). See also J.S.A. v. State, 615 So.2d 1288 (Ala.Cr. App.1993); T.J. v. State, 611 So.2d 1116, 1118 (Ala.Cr.App.), cert. denied, 611 So.2d 1118 (Ala.1992); A.M. v. State, 621 So.2d 369 (Ala.Cr.App.1992)."
A.W.M. v. State, 627 So.2d 1148, 1155 (Ala. Cr.App.1993).
Our review of the record in this case convinces us that the juvenile court evaluated the underlying circumstances of the offense and the offender, in addition to considering the required statutory factors. We hold that the order of transfer is supported by clear and convincing evidence.

V.
The appellant alleges that his constitutional right to confront witnesses was violated by the admission of the affidavit of Southside Assistant Police Chief Stanley Stroup and a document entitled "underlying facts and circumstances" which had been used to obtain a search warrant and by the admission of an autopsy report.
"[A]t a juvenile transfer hearing, hearsay evidence that violates the child's right of confrontation may not even be admitted, much less constitute the sole basis for a finding of probable cause to transfer the child to circuit court, because such a practice violates Rules 11(H) and (I)[, A.R.Juv.P.,] and Ala.Code 1975, § 12-15-66(b)." O.M. v. State, 595 So.2d 514, 518 (Ala.Cr.App.1991), writ quashed, 595 So.2d 528 (Ala.1992). See also M.M. v. State, 629 So.2d 734 (Ala.Cr. App.1993); W.M. v. State, 607 So.2d 1303, 1304-05 (Ala.Cr.App.1992).
Assistant Chief Stroup was permitted to testify to the contents of his affidavit and to the contents of a document he prepared entitled "underlying facts and circumstances" which he used in obtaining the search warrant. That document contained a brief summary of information obtained from Jason Myrick, Justice Myrick, Helen Broughton, John Oscar Broughton, Steve Pelletier, Simmone Pelletier, Wendell Vinson, Matt Ward, and Tammy Owens. C.R. 92. The information in the "underlying facts and circumstances" document was obtained either by Stroup personally or was given to Stroup by other investigating officers.
Both the affidavit and the "underlying facts and circumstances" document were presented to the judge issuing the search warrant. R. 44, June 11, 1993. The prosecutor, in response to defense counsel's repeated hearsay objections, stated that these documents and Stroup's testimony were offered not for the truthfulness of the matters contained therein, but to establish probable cause for the issuance of the search warrant. R. 31, 42-43, June 11, 1993.
The execution of this search warrant resulted in the discovery of evidence connecting the appellant to the murder. The appellant's car matched eyewitness Justin Myrick's description of the vehicle used to commit the drive-by shooting. Two SKS assault rifles were discovered. Forensic examination of the interior of the appellant's car revealed the presence of gun powder residue. R. 140, 147, June 11, 1993.
Defense counsel's repeated objections to the introduction of the testimony and documents used in obtaining the search warrant were on the ground of "hearsay." *582 This Court in Hudgins v. State, 615 So.2d 1297 (Ala.Cr.App.1993), held that an objection based on hearsay did not preserve an argument based on the right to confront witnesses.
"[T]he stated grounds of the objection and the motion to exclude raised at trial were `hearsay' and denial of the right of `cross-examination.' That is not, however, the ground raised on appeal. `The right of confrontation is not necessarily coextensive with the hearsay rule.' O.M. v. State, 595 So.2d 514, 516 (Ala.Cr.App.1991), cert. quashed, 595 So.2d 528 (Ala.1992). See also D.D.P. v. State, 595 So.2d 528, 532 (Ala.Cr.App.1991). As noted in White v. Illinois, 502 U.S. 346 [356]-[358], 112 S.Ct. 736, 743-744, 116 L.Ed.2d 848 (1992), `the question of what in-court procedures are constitutionally required to guarantee a defendant's confrontation right once a witness is testifying ... is quite separate from that of what requirements the Confrontation Clause imposes as a predicate for the introduction of out-of-court declarations.' See the concurring opinion of Justice Thomas in White v. Illinois, 502 U.S. at [358], 112 S.Ct. at 744, wherein he makes the observation that `this Court's cases unnecessarily have complicated and confused the relationship between the constitutional right of confrontation and the hearsay rules of evidence.'"
Hudgins v. State, 615 So.2d at 1299. "The right of confrontation is not necessarily coextensive with the hearsay rule. Evidence admissible over a hearsay objection may be inadmissible because it violates the right of confrontation and cross-examination." O.M. v. State, 595 So.2d 514, 516 (Ala.Cr.App. 1991), cert. quashed, 595 So.2d 528 (Ala. 1992). "`In order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated and a ruling on the objection must be made by the trial court.' Goodson v. State, 540 So.2d 789, 791 (Ala.Cr.App.1988)." Hudgins v. State, 615 So.2d at 1299. "Even in juvenile cases, proper and timely objections are required [to preserve an issue for appellate review]. See Ex parte Brown, 540 So.2d 740, 744-45 (Ala. 1989)." P.W. v. State, 625 So.2d 1207, 1209 (Ala.Cr.App.1993).
The appellant contends that the issues in his appeal should be "reviewed according to the plain error exception" because this case is a capital case involving the death penalty and because "the plain error exception is appropriate in those circumstances in which a miscarriage of justice would otherwise result." Appellant's reply brief at 13. We reject this argument because the plain error doctrine applies only in "cases in which the death penalty has been imposed." Rule 45A, A.R.App.P. (emphasis added). At this point, no penalty has been imposed on the appellant.
Furthermore, the hearsay documents the officer presented to the issuing judge in obtaining the search warrant were admissible for the limited purpose of demonstrating probable cause for the issuance of the warrant. See McCrary v. State, 500 So.2d 1199, 1200-01 (Ala.Cr.App.), reversed on other grounds, 500 So.2d 1201 (Ala.1986); Satterwhite v. State, 364 So.2d 359, 361 (Ala. 1978).
Assistant Chief Stroup was also permitted to testify to the contents of an autopsy report he received from Dr. Alan Stilwell, the state medical examiner. The introduction into evidence of the autopsy report through Stroup's testimony was objected to on the grounds of hearsay and because it violated the appellant's constitutional right to confront the medical examiner.
Assistant Chief Stroup testified that he was present during the autopsy performed on the body of the victim and that he received an autopsy report from Dr. Alan Stilwell, the state medical examiner, containing the results of the autopsy. R. 65, June 11, 1993. This report was identified by Stroup as a true and correct copy of the report that he received from Dr. Stilwell and was admitted into evidence "for the purposes of this [transfer] hearing" over the appellant's objections on the grounds of hearsay and violation of his constitutional right to confront Dr. Stilwell. R. 66-67, June 11, 1993. Stroup did not comment on the contents of the report.
*583 Dr. Stilwell's "conclusion" contained in the autopsy report stated:
"It is my opinion that Gary Goodwin Myrick, a 40-year-old white male, died as a result of a single high velocity gunshot wound to the left back, with a through-and-through injury to the left chest and injury to the left lung and subsequent internal bleeding." C.R. 101.
No bullet was recovered from the body and the report did not offer any speculation as to the caliber of the bullet inflicting the fatal wound.
Although the admission of the autopsy report may have constituted error, see Grantham v. State, 580 So.2d 53, 55-58 (Ala.Cr. App.1991); Lowery v. State, 55 Ala.App. 514, 520-21, 317 So.2d 365, 371, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975); but see White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), that error, if any, did not prejudice the appellant. A review of the report shows that the only potentially damaging information contained in that report, for the purposes of the transfer hearing, was Dr. Stilwell's opinion that there was evidence of a "high velocity" gunshot wound to the victim's body. C.R. 98, 101. The cause of death was not disputed.
Matt Ward and E.B. were accomplices and codefendants of the appellant. Fifteen-year-old E.B. testified that the appellant fired his rifle in the direction of the house 15 to 18 times. R. 126, 128, March 26, 1993. Assistant Chief Stroup testified that he saw Gary Myrick at the scene. He testified that "most of the blood was coming out of his left shoulder. Obviously, he had some sort of wound there." R. 24, June 11, 1993. Stroup stated that he "found what appeared to be either a bullet hole or a puncture wound in his back; very little blood protruding from him." R. 24, June 11, 1993. He further testified that the wound to the back appeared to be an "entrance wound." R. 98, 99, 101 June 11, 1993. Stroup testified that he was present when the autopsy was performed on the body of Gary Myrick.
Here, even excluding the autopsy report, there was an abundance of evidence to establish probable cause to connect the appellant with the murder. "A denial of the right of confrontation may, in some circumstances, constitute harmless error." D.D.P. v. State, 595 So.2d 528, 533 (Ala.Cr.App.1991) ("[t]he improper admission [of the fingerprint report] was harmless as to [one of four codefendants] because [the victim] identified [that defendant] as one of her assailants and that identification, alone, was sufficient to establish probable cause").
The order of the juvenile court directing the transfer of the appellant to circuit court for criminal prosecution as an adult is supported by clear and convincing evidence. The judgment of the juvenile court is affirmed.
AFFIRMED.
All Judges concur.
NOTES
[1] Ala.Code 1975, § 12-15-60(a), provides:

"When a child is not released from detention or shelter care as provided in section 12-15-58, a petition shall be filed and a hearing held within 72 hours, Saturdays, Sundays and holidays included, to determine whether continued detention or shelter care is required."
[2] The "transfer hearing" in this case consisted of separate hearings held on March 26, 1993, June 11, 1993, July 19, 1993, and September 2, 1993. The pages of the five-volume record are not numbered consecutively. Therefore, references to the record will be cited by the page number followed by the date of the hearing. The designation "C.R." refers to the clerk's record appearing in volume I.
[3] We note that the case action summary, which contains the juvenile court's written order entered at this hearing, is dated August 13, 1992.
[4] This issue was not presented to the juvenile court. We address this issue on appeal under Rule 52(b), A.R.Civ.P. See Part II of this opinion.